**YAHOO! INC., a Delaware corporation, Plaintiff,**

v.

**LA LIGUE CONTRE LE RACISME ET, L'ANTISEMITISME, a French association, et al., Defendants.**

**No. 00–21275 JF.**

United States District Court, N.D. California, San Jose Division.

June 7, 2001.

Robert C. Vanderet, Neil S. Jahss, O'Melveny & Myers, LLP, Los Angeles, CA, Michael Traynor, Cooley Godward, LLP, San Francisco, CA, for defendants.

Ronald S. Katz, Coudert Brothers, San Francisco, CA, Richard A. Jones, Coudert Brothers, San Jose, CA, for plaintiff.

## ORDER DENYING MOTION
## TO DISMISS

FOGEL, District Judge.

This case presents novel legal issues arising from the global nature of the Internet.[1] *See Reno v. ACLU*, 521 U.S. 844, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997) (describing the Internet as a unique and wholly new medium of worldwide human communication) (*internal citation omitted*). Defendants La Ligue Contre Le Racisme Et L'Antisemitisme ("LICRA") and L'Union Des Etudiants Juifs De France ("UEJF") have obtained a court order in France which requires Plaintiff Yahoo!, Inc. ("Yahoo!") to "render impossible" access by persons in France to certain content on servers based in the United States. Yahoo! now seeks a declaration by this Court that the order of the French court is unenforceable in the United States because it contravenes the Constitution and laws of the United States. Defendants move for dismissal of this action on the ground that this Court lacks personal jurisdiction over them. *See* Fed.R.Civ.P. 12(b)(2). The Court has read the moving and responding papers and has considered the oral arguments of counsel presented on Monday, April 9, 2001. For the reasons set forth below, the motion will be denied.

## I. BACKGROUND

LICRA and UEJF are citizens of France. Yahoo! is a corporation organized under the laws of Delaware with its principal place of business in Santa Clara, California. Yahoo! is an Internet service provider which operates various Internet web sites and services which end-users can access at the Uniform Resource Locater ("URL") *"http://www.yahoo.com."* According to Yahoo!'s complaint, Yahoo! services ending in the suffix, ".com", without an associated country code as a prefix or extension (collectively, "Yahoo!'s U.S. Services"), use the English language and target users who are residents of, utilize servers based in and operate under the laws of the United States. Yahoo! subsidiary corporations operate regional Yahoo! sites and services in twenty (20) other countries, including, for example, Yahoo! France, Yahoo! India, and Yahoo! Spain. These regional web sites contain the host country's unique two-letter code as either a prefix or a suffix in their URL (*e.g.*, Yahoo! France is found at *http://www.yahoo.fr* and Yahoo! Korea at *http://www.yahoo.kr*). Yahoo! alleges that all of its regional sites use the local region's primary language, target the local citizenry, and operate under local laws.

Certain services provided by Yahoo! allow end-users to post materials on Yahoo! servers which then can be accessed by end-users at Yahoo!'s Internet sites. As relevant here, Yahoo! end-users are able to post, and have in fact posted, highly offensive matter, including Nazi-related propaganda and memorabilia, the display and sale of which are illegal in France. While Yahoo! avers that its French subsidiary sites do not permit such postings, Yahoo!'s U.S.-based site ending in ".com" does not impose such a restriction because to do so might infringe upon the First Amendment to the United States Constitution. End-users in France are able to access Yahoo!'s

1. The "Internet" and "World Wide Web" are distinct entities, but for the sake of simplicity the Court will refer to them collectively as the "Internet." Generally, the Internet is a decentralized networking system which links computers and computer networks around the world. The World Wide Web is a publishing forum consisting of millions of individual web sites which contain various forms of content (i.e., text, images, animation, etc.).

U.S. services via the web site located at www.yahoo.com.

██ On or about April 5, 2000, LICRA sent a "cease and desist" letter to Yahoo!'s headquarters in Santa Clara, California, stating that "unless you cease presenting Nazi objects for sale [on the U.S. Auction Site] within 8 days, we shall size [sic] the competent jurisdiction to force your company to abide by [French] law." Defendants then employed the United States Marshal's Office to serve process on Yahoo! in California and filed civil complaints against Yahoo! in the Tribunal de Grande Instance de Paris (the "French Court") for alleged violation of a French criminal statute barring the public display in France of Nazi-related "uniforms, insignia or emblems" (the "Nazi Symbols Act"). *See* Le Nouveau Code Penal Art. R.645–2. On May 22, 2000 the French Court issued an order (the "French Order") directing Yahoo! to "take all necessary measures" to "dissuade and render impossible" any access via "yahoo.com" by Internet users in France to the Yahoo! Internet auction service displaying Nazi artifacts. (*See* Complaint, Exhibit A: Translated Copy of May 22 Order.) On November 20, 2000, the French Court "reaffirmed" its Order of May 22 and directed Yahoo!, *inter alia*, to 1) re-engineer its content servers in the United States and elsewhere to enable them to recognize French Internet Protocol ("IP") addresses and block access to Nazi material by end-users assigned such IP addresses; 2) require end-users with "ambiguous" IP addresses to provide Yahoo! with a declaration of nationality when they arrive at Yahoo!'s home page or when they initiate any search using the word "Nazi"; and 3) comply with the Order within three (3) months or face a penalty of 100,000 Francs (approximately U.S. $13,300) for each day of non-compliance. The Court denied Defendants' request to enforce its Order or impose any penalties directed at Yahoo! Inc. against Yahoo! France. Thereafter, Defendants again utilized the United States Marshal's Office to serve Yahoo! in Santa Clara with the French Order.[2]

## II. LEGAL STANDARD

██ Where no applicable federal statute indicates otherwise, a district court has personal jurisdiction over a nonresident defendant to the extent that the law of the forum state constitutionally provides. *See Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1286 (9th Cir.1977). California law permits courts to exercise jurisdiction to the full extent authorized by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See* Cal.Civ.Proc. Code § 410.10; *Data Disc*, 557 F.2d at 1286 n. 3. The Due Process Clause, in turn, has been interpreted to authorize the exercise of personal jurisdiction over a nonresident defendant if that defendant

---

2. Before addressing the jurisdictional issue presented by Defendants' motion, the Court must consider whether this case presents a "case or controversy" which is ripe for adjudication. U.S. Const., Art. III. Although Defendants have not yet sought to enforce the French Order in the United States, the Court concludes that, as is discussed in more detail below, Yahoo! nonetheless faces immediate and ongoing consequences because of its refusal to comply with that Order. Without an expeditious means for determining whether the French Order is enforceable in the United

States, Yahoo! must either comply with the Order or face the daily accumulation of penalties against it, subject to an uncertain legal outcome if and when Defendants take steps to enforce the Order in the United States. The coercive effect of such a situation is self-evident; this would appear to be a classic example of a situation in which declaratory relief would clarify the present and ongoing rights and obligations of the parties. Accordingly, the Court concludes that this case is ripe for adjudication.

has "minimum contacts" with the forum state such that maintenance of the suit "does not offend 'traditional notions of fair play and substantial justice.'" *See International Shoe Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) *(citation omitted);* see also *Data Disc,* 557 F.2d at 1287.

 Personal jurisdiction over a nonresident of the forum state can be either "general" or "specific." If the nonresident defendant's contacts with the forum state are "substantial" or "continuous and systematic," the defendant is subject to "general jurisdiction" in the forum state even if the cause of action is unrelated to the defendant's activities within the state. *See Helicópteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Data Disc,* 557 F.2d at 1287. Where the defendant's activities within the forum are not so pervasive as to subject it to general jurisdiction, the defendant still may be subject to specific jurisdiction depending upon the *nature* and *quality* of its contacts in relation to the cause of action. *See Data Disc,* 557 F.2d at 1287 *(emphasis added).* The Court of Appeals for the Ninth Circuit applies a three-part test to determine whether a court may exercise specific jurisdiction: 1) the nonresident defendant must do some act or consummate some transaction within the forum or perform some act by which the defendant purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws; 2) the claim must be one which arises out of or results from the defendant's forum-related activities; and 3) the exercise of jurisdiction must be reasonable. *See Bancroft & Masters, Inc. v. Augusta National Inc.,* 223 F.3d 1082 (9th Cir. 2000); *Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1320 (9th Cir.1998); *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 416 (9th Cir.1997).

 When a nonresident defendant raises a challenge to personal jurisdiction, the plaintiff bears the burden of showing that jurisdiction is proper. *See Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 839 (9th Cir.1986). In the context of a motion to dismiss based upon pleadings and affidavits, the plaintiff may meet this burden by making a *prima facie* showing of personal jurisdiction. *See Metropolitan Life Ins. Co. v. Neaves,* 912 F.2d 1062, 1064 n. 1 (9th Cir.1990); *Data Disc,* 557 F.2d at 1285. In determining whether the plaintiff has made a prima facie showing, any doubt is resolved in the plaintiff's favor. *See Metropolitan Life,* 912 F.2d at 1064 n. 1.

### III. DISCUSSION

Yahoo! appropriately does not argue that this Court has general jurisdiction over Defendants, as Defendants clearly do not have substantial, continuous or systematic contacts with California. The Court therefore turns to the question of whether it has specific jurisdiction over Defendants.

### A. Purposeful Availment

 The purposeful availment requirement is intended to give notice to a nonresident that it is subject to suit in the forum state, thereby protecting it from being haled into local courts solely as the result of "random, fortuitous or attenuated" contacts over which it had no control. *Burger King,* 471 U.S. at 476, 105 S.Ct. 2174; *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Yahoo! asserts that Defendants' conduct meets this requirement under the "effects test" articulated by the United States Supreme Court in *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (establishing an "effects test" for intentional action aimed at the forum state). "Under *Calder*

personal jurisdiction can be based upon: '(1) intentional actions (2) expressly aimed at the forum state (3) causing harm, the brunt of which is suffered—and which the defendant knows is likely to be suffered—in the forum state.'" *Panavision,* 141 F.3d at 1321, (*quoting, Core–Vent Corp. v. Nobel Industries AB,* 11 F.3d 1482, 1486 (9th Cir.1993)). The Court of Appeals for the Ninth Circuit recently elaborated on this "effects" standard, holding that in order to satisfy the effects test a plaintiff must allege that the nonresident defendant "engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *See Bancroft & Masters,* 223 F.3d at 1087 (establishing "express aiming" requirement under effects test).

■ This Court concludes that Yahoo! has made a sufficient prima facie showing of purposeful availment under the effects test. Yahoo! alleges that Defendants knowingly have engaged in actions intentionally targeted at its Santa Clara headquarters for the express purpose of causing the consequences of such actions to be felt in California, including 1) LICRA's "cease and desist" letter to Yahoo!'s Santa Clara headquarters; 2) Defendants' request of the French Court that Yahoo! be required to perform specific physical acts in Santa Clara (*e.g.,* re-engineering of its Santa Clara-based servers); and 3) Defendants' utilization of United States Marshals to effect service of process on Yahoo! in California. Yahoo! further alleges that the conscious intent of these actions was to compel it to censor "constitutionally protected content on its U.S.-based Internet services." *See, e.g., Bancroft & Masters,* 223 F.3d 1082; *Lake v. Lake,* 817 F.2d 1416 (9th Cir.1987) (California attorney misrepresented facts in obtaining ex parte child custody order from California court, which the attorney then caused to be enforced in Idaho; having "purposefully directed" the effect in Idaho, the California

attorney was subject to suit there for abuse of process although he never entered state).

Defendants correctly point out that in every Ninth Circuit decision to date in which the effects test has been applied, the plaintiff's cause of action has been akin to a tort claim or the defendant's alleged conduct has been tortious in nature. *See Myers v. Bennett Law Offices,* 238 F.3d 1068, 1074 (9th Cir.2001) (applying effects test where plaintiff filed action for alleged violation of the Fair Credit Reporting Act—but indicating that the particular theory therein was "akin to invasion of privacy cases under state law-cases ..."); *Bancroft & Masters,* 223 F.3d at 1089 (applied effects test where plaintiff sought declaratory judgment of non-dilution and non-infringement of mark; however, concurring opinion, joined by two out of three panel judges, clarified that they imposed jurisdiction only on the assumption that the nonresident defendant, through its letter to plaintiff, "engaged in tortious conduct, *i.e.,* that they intended to effect a conversion of ... [plaintiff's] domain name."); *Panavision,* 141 F.3d at 1321 (noting that "[i]n tort cases" jurisdiction can attach under the effects test and therefore applicable therein because plaintiff's state and federal trademark dilution claims are "akin to a tort case."); *Cybersell,* 130 F.3d at 420 (refusing to apply effects test and indicating that effects test was "with respect to intentional torts directed to plaintiff"); *Ziegler v. Indian River County,* 64 F.3d 470, 473–474 (9th Cir.1995) (application of purposeful availment prong differs depending on whether the underlying claim is a tort or contract claim; § 1983 claim more akin to tort claim and thus apply effects test); *Caruth v. International Psychoanalytical Ass'n,* 59 F.3d 126, 128, n. 1 (9th Cir.1995) (apply effects test to discrimination claims because the "facts alleged in [plaintiff] Ca-

ruth's complaint sound in tort[ ]"); *Lake*, 817 F.2d 1416 (apply effects test where ex-husband brought tort action against ex-wife and her attorney based upon conduct involved in having child removed from ex-husband's custody).[3] Defendants therefore argue that the Court may not apply the effects test in this case absent allegations of tortious conduct. *See Bancroft & Masters*, 223 F.3d at 1087 (noting that personal jurisdiction issue can be challenged again "if following the development of trial it should appear that Augusta National [who challenged personal jurisdiction] acted reasonably and in good faith to protect its trademark against an infringer.") (*concurring opinion*); *Panavision*, 141 F.3d at 1321; *Ziegler*, 64 F.3d at 473.

■ This Court concludes, however, that the application of the effects test in the present case is fully consistent not only with the rationale of the test but also with traditional principles of personal jurisdiction and international law.[4] While filing a lawsuit in a foreign jurisdiction may be entirely proper under the laws of that jurisdiction, such an act nonetheless may be "wrongful" from the standpoint of a court in the United States if its primary purpose or intended effect is to deprive a United States resident of its constitutional rights. Several of the cases discussing the purposeful availment have focused less on the characterization of the plaintiff's cause of action than on whether the defendant's forum-related acts evidenced intentional, or at the very least knowing, targeting of a forum resident(s). *See, e.g., Burger King Corp.*, 471 U.S. at 472–477, 105 S.Ct. 2174; *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 109–113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (*plurality opinion*); *Bancroft & Masters*, 223 F.3d at 1087. Proper application of the test thus appears to require consideration not only of the nature of the defendant's conduct (i.e., whether conduct is wrongful or tortious) but also of whether there is "express aiming" of the conduct, i.e., targeting of a forum resident. *See, e.g., Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1196 (9th Cir.1988); *Panavision*, 141 F.3d at 1321–1322; *Bancroft & Masters*, 223 F.3d at 1087. The focus on evidence of "express aiming" reflects the basic rationale of the effects test in that it assures that a defendant is on notice that it may be subject to suit in the forum state with respect to its forum-related or targeted activities. *See Burger King Corp.*, 471 U.S. at 472, 105 S.Ct. 2174. In the present case, Ya-

---

3. Yahoo! appropriately points out that in several of the aforementioned cases, as in the instant action, the plaintiffs asserted claims for declaratory relief. However, even in such cases the court generally has concluded or assumed that the underlying allegations sounded in tort. *See, e.g., Bancroft & Masters*, 223 F.3d at 1089; *Panavision*, 141 F.3d at 1321 (concluding that dilution of trademark claim was akin to a tort case); *but see, Meade Instruments Corp. v. Reddwarf Starware LLC*, 47 U.S.P.Q.2d 1157, 1998 WL 377041 (C.D.Cal.1998) (concluding that defendant's act of sending cease in desist letters to plaintiff was sufficient contact with California without explicitly concluding that the underlying claim sounded in tort).

4. The Court could direct Yahoo! to amend its complaint so as to allege tort claims, *see Ca-*

*ruth*, 59 F.3d at 128 n. 1 (applying effects test even though complaint only asserted discrimination claims because "alleged facts ... could possibly give rise to several tort claims ..."), but such an approach would be disingenuous. Even though Yahoo! does not allege *per se* that Defendants engaged in tortious conduct, the values which underlie both the effects test and due process clause in general support a finding of personal jurisdiction here. That the fact pattern in this case is novel is simply a reflection of the many new challenges faced by courts which must apply traditional principles to the realities of cyberspace. *See* Lawrence Lessig, *Reading the Constitution in Cyperspace*, 45 Emory L.J. 869 (Summer 1996).

hoo! has alleged with particularity that Defendants "purposefully targeted" its Santa Clara headquarters and thus reasonably could have expected to be haled into a California forum in order to defend the Order they obtained from the French Court.[5]

The Court is especially mindful that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi Metal,* 480 U.S. at 115, 107 S.Ct. 1026 (*quoting United States v. First National City Bank,* 379 U.S. 378, 404, 85 S.Ct. 528, 13 L.Ed.2d 365 (1965) (*Harlan, J., dissenting* )). Accordingly, the Court looks to the Restatement (Third) of Foreign Relations Law § 101 *et al.* (1987) ("Restatement"), which articulates the limitations imposed by international law upon courts determining whether or not to exercise personal jurisdiction over a foreign defendant. Although the Restatement is not binding authority, it does provide valuable guidance. Adopting in essence a broad version of the effects test, the Restatement concludes that a court may exercise jurisdiction over a person "if at the time jurisdiction is asserted ... the person, whether natural or judicial, had carried on outside the state an activity having a substantial, direct, and foreseeable effect within the state, but only in respect to such activity." *Restatement (Third) of Foreign Relations Law* § 421(2)(j); *see also id.,* §§ 402(c), 403(2)(a). *See, Leasco Data Processing Equipment Corp. v. Maxwell,* 468 F.2d 1326, 1340–1344 (2nd Cir. 1972) (applying effects test in international context); *Eskofot A/S v. E.I. Du Pont De Nemours & Company,* 872 F.Supp. 81, 87–88 (S.D.N.Y.1995) ("personal jurisdiction may be asserted by courts where a foreign

corporation, through an act performed elsewhere, causes an effect in the United States."); *United States v. International Brotherhood of Teamsters, et al.,* 945 F.Supp. 609, 620 (S.D.N.Y.1996) (noting that it "is an elementary principle of international law that a court may exercise jurisdiction over a person" under the effects test) (*citing Restatement* § 421(2)(j) and *Restatement (Second) of Conflict of Laws* § 50 (1971)); *United States v. International Brotherhood of Teamsters,* 72 F.Supp.2d 257, 262 (S.D.N.Y.1999) (same); Teresa Schiller and Stephan Wilske, *International Jurisdiction in Cyberspace: Which States May Regulate The Internet?,* 50 Fed.CommL.J. 117 (Dec.1997) (noting that while controversies may arise where the conduct was lawful where carried out the effects test "[a]s a basis for jurisdiction ... is increasingly accepted.").

## B. Arising Out Of

 The second element of a specific jurisdiction analysis is a determination as to whether the plaintiff's claims arise out of the defendant's forum-related conduct. As to this element, the Court of Appeals for the Ninth Circuit employs a "but for" test. *See Ballard v. Savage,* 65 F.3d 1495, 1500 (9th Cir.1995). Accordingly, in the present case Yahoo! must demonstrate that it would have no need for a judicial declaration but for Defendants' forum-related activities. *See Bancroft & Masters,* 223 F.3d at 1088. This requirement is easily met. But for Defendants' filing and prosecution of the French lawsuit, which in turn was obtained by Defendants' use of formal process in California, Yahoo! would have no need for a declaration that the French Order is unenforceable in the United States. *See, e.g., Lake,* 817 F.2d at

---

**5.** Obviously, Defendants also reasonably could have expected to have to appear in a United States court in order to *enforce* the French Order. In this instance, Yahoo!'s de-

claratory relief action merely reverses the position of the parties while addressing the same issues which would arise were Defendants to bring such an enforcement action.

1423 ("the alleged injury to the [plaintiff] arose out of [the defendant-lawyer's] acts in procuring the ex parte order"); *Panavision*, 141 F.3d at 1322 (defendant's "registration of Panavision's trademarks as his own domain names on the Internet had the effect of injuring Panavision in California ... But for ... [defendant's] conduct, this injury would not have occurred."); *Bancroft & Masters*, 223 F.3d at 1088 ("But for the letter to NSI, which ... forced [plaintiff] to choose between this suit and losing the use of its website, it is clear that [plaintiff] would have no need for a judicial declaration of its right to use masters.com").

## C. Reasonableness

■■■■ The final requirement for specific jurisdiction is that the exercise of jurisdiction be reasonable. For the exercise of jurisdiction to be reasonable it must comport with fair play and substantial justice. *Burger King*, 471 U.S. at 476, 105 S.Ct. 2174; *Bancroft & Masters*, 223 F.3d at 1088. When purposeful availment has been established, Defendants have the burden of demonstrating a "compelling case" of unreasonableness. *Bancroft & Masters*, 223 F.3d at 1088. "The reasonableness determination requires the consideration of several specific factors: (1) the extent of the defendant's purposeful interjection into the forum state; (2) the burden on the defendant in defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Id.* No one factor is dispositive as the Court must balance all seven. *Panavision*, 141 F.3d at 1322.

### 1. Purposeful Interjection

"Even if there is sufficient 'interjection' into the state to satisfy the purposeful availment prong, the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction under the reasonableness prong." *Panavision*, 141 F.3d at 1323 (*citations omitted*). Here, Defendants' acts were aimed at Yahoo! in California. Defendants purposefully accessed Yahoo!'s U.S.-based web site, mailed a demand letter to Yahoo! in Santa Clara, used U.S. Marshals to serve Yahoo! in Santa Clara, and purposefully sought and obtained an order requiring Yahoo! to reconfigure its U.S.-based servers, specifically including servers located in California. The purposeful interjection factor thus weighs in favor of this Court's exercise of personal jurisdiction.

### 2. Defendants' Burden in Litigating

■■■ "A defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but unless the inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." *Id.* (*citations omitted*). The Court recognizes that the burden on Defendants as non-profit organizations organized in France of litigating in California is not trivial. However, it does not appear that requiring Defendants to litigate this particular case in California is constitutionally unreasonable. *See id.* ("in this era of fax machines and discount air travel requiring [defendant] ... to litigate in California is not constitutionally unreasonable.") (*citations omitted*). Defendants may confer with their counsel by telephone, fax, and e-mail, and under this Court's Local Rules may even make telephonic court appearances. Further, it is likely that this case will be resolved largely if not entirely by dispositive motions ad-

dressing issues of law which do not require extensive fact discovery in this forum. Defendants have made no factual showing as to the severity of their burden other than making a generalized reference to the financial expense of participating in litigation in a foreign country and noting correctly that the jurisdictional barrier is higher when the defendant is not a resident of the United States. *See Sinatra,* 854 F.2d at 1199 ("However, modern advances in communications and transportation have significantly reduced the burden on litigating in another country."); *Walker & Zanger Ltd. v. Stone Design S.A.,* 4 F.Supp.2d 931, 940 (C.D.Cal.1997) ("[d]efendants have not asserted any hardship beyond the expense of participating in litigation in a foreign country"). Defendants have not demonstrated that the burden of litigating the instant case will be so great as to constitute a deprivation of due process.

### 3. Conflict With Sovereignty of France

Generally, as just noted, a plaintiff seeking to hale a foreign defendant into court in the United States must meet a "higher jurisdictional threshold" than is required when a defendant is United States resident. *See Core–Vent Corp.,* 11 F.3d at 1484. However, since sovereignty concerns inevitably arise whenever a United States court exercises jurisdiction over a foreign national, this factor is "by no means controlling," *Ballard,* 65 F.3d at 1501; otherwise "it would always prevent suit against a foreign national in a United States court." *Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1333 (9th Cir.1984). The instant action involves only the limited question of whether this Court should recognize and enforce a French Order which requires Yahoo! to censor its U.S.-based

services to conform to French penal law. While this Court must and does accord great respect and deference to France's sovereign interest in enforcing the orders and judgments of its courts, this interest must be weighed against the United States' own sovereign interest in protecting the constitutional and statutory rights of its residents. *See, e.g., Bachchan v. India Abroad Publications Inc.,* 154 Misc.2d 228, 585 N.Y.S.2d 661, 665 (1992) (English libel judgment unenforceable because it was "antithetical to the protections afforded the press by the U.S. Constitution"); *Matusevitch v. Telnikoff,* 877 F.Supp. 1 (D.D.C.1995) (granting summary judgment in favor of plaintiff seeking declaration that English libel judgment was not enforceable in U.S. because the judgment was "contrary to U.S. libel standards"); Cal.Civ.Proc.Code § 1713.4(b)(3) (court need not recognize foreign money judgment based on cause of action repugnant to public policy of state). For purposes of its jurisdictional analysis, this Court concludes that the sovereignty factor weighs in favor of this Court's exercise of personal jurisdiction.[6]

### 4. California's Interest in Adjudicating the Dispute

California has an interest in providing effective legal redress for its residents. *See Core–Vent,* 11 F.3d at 1489; *Sinatra,* 854 F.2d at 1200; *Gordy v. Daily News,* 95 F.3d 829, 836 (9th Cir.1996). This interest appears to be particularly strong in this case in light of Yahoo!'s claim that its fundamental right to free expression has been and will be affected by Defendants' forum-related activities. *See, e.g.,* Cal.Civ. Proc.Code § 425.16 (providing procedural mechanism to dismiss at an early stage

---

**6.** Because Yahoo! is seeking equitable relief, this determination is without prejudice to Defendants' right to raise issues related to sover-

eignty and international comity as an equitable factor in subsequent proceedings herein.

lawsuits that "chill the valid exercise the constitutional right[ ] of freedom of speech"). As noted earlier, Defendants argue that Yahoo! has suffered no actual injury because they have not sought to enforce the French Order in the U.S. and may never seek to do so. Defendants' proposed "wait and see" approach, however, only highlights the importance of California's policy interest in providing a means for obtaining declaratory relief under circumstances such as those presented here. Many nations, including France, limit freedom of expression on the Internet based upon their respective legal, cultural or political standards. Yet because of the global nature of the Internet, virtually any public web site can be accessed by end-users anywhere in the world, and in theory any provider of Internet content could be subject to legal action in countries which find certain content offensive.[7] Defendants' approach would force the provider to wait indefinitely for a determination of its legal rights, effectively causing many to accept potentially unconstitutional restrictions on their content rather than face prolonged legal uncertainty. California's interest in adjudicating this dispute thus weighs strongly in favor of the exercise of personal jurisdiction.

### 5. Efficient Resolution

This factor focuses on the location of the evidence and the witnesses. "It is no longer weighed heavily given the modern advances in communication and transportation." *Panavision*, 141 F.3d at 1323. In any event, this factor appears to be neutral in light of the limited amount of evidence and small number of potential witnesses in the present action. *See id.*

### 6. Convenient and Effective Relief for Plaintiff

This factor focuses on the importance of the forum to the plaintiff's interest in convenient and effective relief. Yahoo! contends that only a United States court has jurisdiction to adjudicate the question of whether the French Order is enforceable in the United States. Defendants contend that Yahoo! could have challenged the Order's validity, scope and extraterritorial application in France. The Court concludes that even if it were to assume that Yahoo! could challenge the extraterritorial application of the French Order in either jurisdiction or in both, it would hold that this Court is the more efficient and effective forum in which to resolve the narrow legal issue in question: whether the French Order is enforceable in the United States in light of the Constitution and laws of the United States. *See, e.g., Gates*, 743 F.2d at 1334 ("district court in Arizona is more efficient forum to resolve .. interpretations of Arizona law" than Philippines court). Accordingly, this factor weighs in favor of exercising jurisdiction.

### 7. Alternative Forum

The analysis of this factor is identical to that of the previous one. While the parties disagree as to whether the French Court offers an alternative forum for determining whether the French Order is enforceable in the United States, the point is moot in light of the superiority of a

---

7. Indeed, there can be little doubt that most people in the United States, including this Court, find the display and sale of Nazi propaganda and memorabilia profoundly offensive. However, while this fact may cause one to sympathize with Defendants' efforts before the French Court, it is immaterial to this Court's jurisdictional determination. As Yahoo! and others have pointed out, a content restriction imposed upon an Internet service provider by a foreign court just as easily could prohibit promotion of democracy, gender equality, a particular religion or other viewpoints which have strong support in the United States but are viewed as offensive or inappropriate elsewhere.

United States forum for addressing the limited legal question at issue here.

### 8. *Balancing of Factors*

It is clear from the foregoing discussion that the balance of factors weighs in favor of this Court's exercise of personal jurisdiction over Defendants. The Court concludes that Defendants have failed to make the "compelling case" necessary to rebut the presumption that jurisdiction is reasonable.

### IV. DISPOSITION

Accordingly, and good cause therefore appearing, the motion to dismiss is denied. Defendants shall answer the complaint within twenty (20) days of the date this Order is filed.

IT IS SO ORDERED.