**Morarji DESAI, Plaintiff–Appellant,**

**v.**

**Seymour HERSH, Defendant–Appellee.**

**Nos. 90–1435, 90–2207.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 5, 1990.

Decided Jan. 28, 1992.

Rehearing and Rehearing In Banc
Denied March 26, 1992.

See also 719 F.Supp. 670.

John F. O'Meara (argued), George M. Burditt, Robert G. Epsteen, Malcolm A. Chandler, Burditt & Radzius, Cyriac D. Kappil, argued, Francis Baumgart, Baumgart & Associates, Tyrone C. Fahner, Daniel M. Harris, Mayer, Brown & Platt, Chicago, Ill., for plaintiff-appellant.

Thomas P. Walsh, Asst. U.S. Atty., Crim. Div., Lee A. Russo, Michael T. Trucco, Michael W. Coffield, Coffield, Ungaretti, Harris & Slavin, Bernard J. Nussbaum, Sonnenschein, Nath & Rosenthal, David L. Carden, Jones, Day, Reavis & Pogue, Chicago, Ill., Michael Nussbaum (argued), Eric L. Lewis, Nussbaum & Wald, Kate A. Martin, Washington, D.C., for defendant-appellee.

Before COFFEY and KANNE, Circuit Judges, and GRANT, Senior District Judge.[*]

KANNE, Circuit Judge.

Courts and scholars alike have expressed their concern that the public's interest in a free press and open news dissemination might be severely inhibited if journalists were required to reveal the identity of their confidential sources. The disclosure of these sources, however, is often critical to a defamed individual's hopes for preserving his or her reputation, particularly in those instances where the individual is a public figure who must establish that the defendant published the statement at issue with actual malice or reckless disregard of the truth. *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). These competing interests come into conflict in this libel action, where we are asked on appeal by the former Prime Minister of India to find that the district court improperly allowed author Seymour Hersh to testify at trial concerning the background and reliability of his sources—without ever disclosing their identity.

The plaintiff, Morarji Desai, has played a prominent role in Indian politics and public life throughout his career. From 1930 to 1947, he participated in the nonviolent movement to gain India's independence from Britain. In 1957, he was elected to the Indian national parliament where he served for more than two decades. During his parliament tenure, he held several positions in the Indian Cabinet, including Deputy Prime Minister and Finance Minister under the government of Prime Minister Indira Gandhi. He ultimately became Prime Minister of India on March 24, 1977, and remained as such until July 15, 1979. Currently, he is the vice-chancellor of the Gujarat Vidyapith, a university founded by Majatma Gandhi.

In his book, *The Price of Power: Kissinger in the Nixon White House,* defendant Seymour Hersh examines how former National Security Advisor Henry Kissinger conducted U.S. foreign policy during President Richard Nixon's first term. Included in Hersh's commentary is a chapter reviewing the U.S. foreign policy decisions concerning the 1971 India–Pakistan War, a crisis in which the United States adopted a controversial, hard-line policy against India and in favor of West Pakistan.[1] According

---

[*] The Honorable Robert A. Grant, of the Northern District of Indiana, is sitting by designation.

1. Soon after West Pakistan commenced a war against the secessionist forces of East Pakistan on March 25, 1971, reports of war atrocities—including systematic elimination of women and children—began reaching the international press. Hersh observes that while "most nations" immediately reacted by denouncing West Pakistan, "the United States—at the specific direction of the White House—remained mute." *Price of Power* at 445. According to Hersh, Nixon and Kissinger were reluctant to criticize East Pakistan because they viewed its president, Yahya Khan, as "their conduit to the Chinese" and a potential summit meeting in Peking. *Id.* Thus, when Khan carried the war to the Indian front by launching a surprise attack against eight Indian airfields on December 3, 1971, the White House was groping for some rationale for "tilting" towards West Pakistan. Hersh concludes:

[A] miraculous new element emerged to buttress the seemingly incomprehensible White House policy: highly classified evidence that Mrs. Gandhi was planning to attack East Pakistan. In mid-May, Kissinger wrote, he and Nixon learned "from sources heretofore reli-

to Hersh, President Nixon and Dr. Kissinger justified this policy based largely on information received from a "reliable source" reporting from India through the Central Intelligence Agency. The identity of the source who furnished this information was never revealed by the National Security Council or the CIA.

Desai's libel claim focuses on Hersh's assertion that the Indian–CIA source was "undoubtedly Morarji Desai." In the passage at issue, Hersh specifically cites several unidentified government "officials" to establish Desai's link with the CIA:

> Desai was a paid informer for the CIA and was considered one of the Agency's most important "assets."
>
> \*    \*    \*    \*    \*    \*
>
> Former American intelligence officials recall that Desai was a star performer who was paid $20,000 a year by the CIA during the Johnson Administration through the 303 Committee, the covert intelligence group that was replaced by the 40 Committee under Nixon and Kissinger. One official remembers that Desai continued to report after Nixon's election, much of his information having to do with contacts between the Indian government and the Soviet Union. According to this official, Kissinger was "very impressed with the asset. He couldn't believe it was really in the bag."

*Price of Power* at 450. Desai's pleadings denied that he ever had any connections with the CIA, and alleged that Hersh published these statements knowing they were false or with reckless disregard as to their falsity.

By interrogatory, Desai asked for the identities of the sources who formed the basis for Hersh's conclusion, but Hersh refused each request. Subsequently on April 20, 1984, Desai filed a motion for an order precluding Hersh from relying on or referring to any unidentified confidential sources at trial.

It was not until five years later on September 13, 1989, that the district court ruled that it would deny Desai's motion. In a written opinion issued on October 4, 1989, the district court first pointed out that Desai had failed to make any motion to compel Hersh to reveal the identities of his sources pursuant to § 8–903 of the Illinois Reporter's Privilege Law, a statute designed to protect the confidentiality of a reporter's sources. The court then held that invocation of the Illinois Reporter's Privilege would not prohibit Hersh from testifying about the reliability of his confidential sources even though their identities would not be revealed:

> The court concludes that the proper exercise of the "newsman's" privilege will not be penalized by precluding defendant's reliance on confidential sources....

However, the court did permit Desai to inquire into the existence and reliability of Hersh's confidential sources—but without requiring them to be identified.

During his testimony at trial, Hersh explained that he relied on six separate confidential sources to support his assertion that Desai was a CIA informant. Hersh testified that of the six sources, "two were out of government, one was in the CIA, one was in the world of the NSA, National Security Agency, which is the communications intelligence people, and two were working in the White House." Two of these sources he characterized as "active sources" who "were telling me details, a lot of detail." And, at one point during his direct testimony, Hersh stated that "I thought the most important thing was to know that the sources upon which I was relying were sources that I had the utmost confidence in, and that was the driving force of what I wrote."

The jury returned a special verdict in favor of Hersh and the district court entered judgment accordingly. Although De-

---

able" that Mrs. Gandhi had ordered plans for a lightning 'Israeli-type' attack to take over East Pakistan." The evidence, taken at face value in the White House, confirmed his and Nixon's view that as "Pakistan grew more and

more isolated internationally, she [Gandhi] appeared to seek above all Pakistan's humiliation."
*Id.* at 450.

sai now raises several issues on appeal, only one merits discussion: whether the district court properly permitted Hersh to testify at trial regarding the reliability of his confidential sources without revealing their identity.

Illinois enacted a reporter's privilege statute on July 1, 1982. The privilege, as then codified, provided as follows:

> No court may compel any person to disclose the source of any information obtained by a reporter during the course of his or her employment except as provided in Part 9 of Article VIII of this Act. The privilege conferred by these Sections is not available in any libel or slander action in which a reporter or news medium is a party defendant.

Ill.Rev.Stat., ch. 110, § 8–901 (1982). The Illinois Legislature subsequently amended the reporter's privilege on September 16, 1985, by extending the application of the privilege to libel and slander cases, and by specifying requirements for seeking disclosure in such cases. Ill.Rev.Stat., ch. 110, §§ 8–903, 8–904 and 8–907 (1989).

■ Rule 501 of the Federal Rules of Evidence requires a federal court in civil cases and proceedings to determine the existence of a privilege in accordance with state law if the privilege supplies the rule of decision with regard to an element of a defense.[2] However, although the extension of the Illinois Reporter's Privilege to Hersh is determined by state law, the collateral effects of invoking this privilege (or any privilege, for that matter) during a federal trial are not immune from the application of the Federal Rules of Evidence.

Indeed, testimonial privileges must be strictly construed to give effect to federal evidentiary requirements. *See Trammel v. United States*, 445 U.S. 40, 51, 100 S.Ct. 906, 912, 63 L.Ed.2d 186 (1980). In undertaking a balancing test between testimonial privilege in another context and the need for probative evidence, the Supreme Court reiterated the general rule that "[t]estimonial exclusionary rules and privileges contravene the fundamental principle that 'the public ... has a right to every man's evidence.' ... As such [privilege laws] ... must be strictly construed and accepted 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normal predominant principle of utilizing all rational means for ascertaining the truth.' " *Id.* (citations omitted); *accord University of Pennsylvania v. EEOC*, 493 U.S. 182, 110 S.Ct. 577, 582, 107 L.Ed.2d 571 (1990).

■ In this case, there is no doubt that the Illinois Reporter's Privilege Law determines the issue of whether Hersh should be afforded protection from disclosing the identities of his sources.[3] *See* Fed.R.Evid. 501; *Armour Int'l Co. v. Worldwide Cosmetics, Inc.*, 689 F.2d 134, 135 (7th Cir. 1982). Nor is there any question that Desai did not make any application for seeking disclosure of Hersh's sources as prescribed in § 8–907(2) of the Illinois Privilege Law. It is also true, however, that when this action was commenced (and for a period thereafter) there was no state statutory mechanism for seeking the identity of a reporter's sources; as we have noted

**2.** Rule 501 provides as follows:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in the rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or

> political subdivision thereof shall be determined in accordance with State law.

Fed.R.Evid. 501.

**3.** We reject Desai's contention that reporters who author books are not protected by the Illinois Shield Law. The privilege extends to "any person who was a reporter at the time the information was procured or obtained." Ill. Rev.Stat., ch. 110, ¶ 8–902(a) (defining reporter). A review of the record clearly indicated that Hersh researched his book while writing a series for the *New York Times Magazine* on the CIA's relations with Libya. Hersh had also worked for several other newspapers prior to the publication of *Price of Power*.

earlier, the Illinois Privilege Law did not apply to libel until the enactment of the 1985 amendments. Yet even after the passage of these amendments, Desai declined to seek disclosure of Hersh's sources following Hersh's earlier refusal to provide them in discovery. Instead, Desai relied solely on his 1984 motion which requested that Hersh be precluded from relying or referring to any unidentified confidential sources at trial. We are now asked to determine whether the district court improperly denied that motion—an evidentiary decision collateral to the issue of whether Hersh can invoke the protection of the Illinois Reporter's Privilege Law.

■ An essential factor in ensuring fairness in the presentation and evaluation of evidence in any case, including a *Sullivan*-type libel action, is the application of Fed.R.Evid. 403, which precludes the admission of evidence which "although relevant ... is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury...." Proof of actual malice under *Sullivan* invariably depends on knowing the identity of the reporter's source, since a libel plaintiff needs to demonstrate that the reporter's source was unreliable or that the reporter failed to take sufficient steps to verify his or her story. *Zerilli v. Smith*, 656 F.2d 705, 714 (D.C.Cir.1981); *Carey v. Hume*, 492 F.2d 631, 637 (D.C.Cir.1974).[4] Without such information, however, inquiring into the reliability of these sources would be a futile exercise: reporters could volunteer information buttressing their defense, and then plead the privilege to prevent the disclosure of any detrimental facts. *See Laxalt v. McClatchy*, 116 F.R.D. 438 (D.Nev.1987). Ultimately, juries would be forced to decide the question of malice based on the allegations of a plaintiff claiming libel and a defendant whose defense of reliable sources would be untested—a scenario which spells little hope of success for the plaintiff.

Here, the district court's evidentiary ruling effectively foreclosed Desai from obtaining the information necessary to meet his burden of proof under *Sullivan.* It would be exceedingly difficult for Desai to introduce evidence beyond his own testimony to prove that he was not a paid informant of the CIA. Even if he did succeed in establishing that the statements were false, Desai would still have to prove actual malice by showing that Hersh in fact had no reliable sources, that he misrepresented the reports of his sources, or that his reliance upon those particular sources was reckless. Desai would be hard-pressed to challenge the credibility of sources whom he cannot identify.

Not surprisingly, the general rule has been stated that in defamation actions in which a plaintiff must establish "malice" on the part of a defendant, ordinarily the reporters privilege must give way to disclosure. Louisell & Mueller, *Federal Evidence* § 238 Journalists Privilege, pp. 1118–1119. *See also, Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 725–26 (5th Cir.1980), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 238 (1981).

■ Desai argues that by allowing Hersh to utilize reporters privilege and then permitting Hersh to vouch for the unnamed sources the district court virtually eliminated his ability to test the reliability—or even existence—of Hersh's sources. We agree. The district court, in effect, treated the privilege as absolute. And as the Supreme Court has stated, granting an absolute privilege to journalists to maintain the confidentiality of their sources in a libel case is neither required or authorized, and would substantially enhance the burden of proving actual malice. *Herbert v. Lando*, 441 U.S. 153, 170, 99 S.Ct. 1635, 1645, 60 L.Ed.2d 115 (1979).

■ Desai, however, failed to preserve this argument on appeal. In order to establish the predicate for any error on appeal for the admission of evidence, Fed.

---

**4.** As Judge James Oakes pointed out, "[h]ow else could a plaintiff prove 'actual malice,' defined as knowledge of falsity or reckless disregard of truth or falsity, if not by the closest inquiry into the mind of the alleged defamer?" Hunter, *A Reprise on Herbert v. Lando and the Law of Defamation*, 71 Ky.L.J. 569, 583 (1983).

R.Evid. 103(a)(1) dictates that a timely objection or motion to strike "stating the specific ground for objection" must appear of record. Desai could not take refuge in the exception to this requirement that the grounds of his objection were apparent from the context of his single pretrial motion for preclusion based merely on "fairness, equity and applicable law."

Desai never made a specific objection to Hersh's testimony about his sources which called into play the Federal Rules of Evidence. The attention of the district judge was not directed to the balancing requirements of Rule 403 which direct the district judge to determine whether the probative value of the evidence sought to be excluded by Hersh was substantially outweighed by the danger of unfair prejudice to Desai. Absent the specificity required under Rule 103(a)(1) no error was preserved for our review. *See, e.g., United States v. Sandini,* 803 F.2d 123, 126 (3rd Cir.1986), *cert. denied,* 479 U.S. 1093, 107 S.Ct. 1306, 94 L.Ed.2d 161 (1987) (Rule 403 objection not preserved without specificity). Therefore, the district judge's collateral determination that Hersh could testify about the reliability and background of his sources without disclosing their identity cannot be disturbed on appeal. The judgment of the district court is AFFIRMED.