**SUPERMICRO COMPUTER INC.,**
a California corporation,
**Plaintiff,**

v.

**DIGITECHNIC, S.A. a French corporation, and Carri Systems, dba Digitechnic, a French corporation, Defendant.**

No. C–00–0224–CAL.

United States District Court,
N.D. California.

Jan. 30, 2001.

---

John I. Alioto, Margaret M. Weems, Linda M. Alioto, Alioto & Alioto, San Francisco, CA, for plaintiff.

Jerrald K. Pickering, Pickering Law Corporation, Redding, CA, for defendant.

*ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY ADJUDICATION; AND DEFENDANT'S MOTION TO DISMISS OR STAY*

LEGGE, District Judge.

Now before the court are plaintiff's motion for partial summary adjudication and defendant's motion for a dismissal or stay

of this action. The motions have been briefed, argued and submitted for decision. The court has reviewed the record of the case, the moving and opposing papers on these motions, the arguments of counsel, and the applicable authorities.

## I.

Plaintiff is a California corporation that manufactures computer parts. Defendant is a French corporation that assembles and sells computer network systems. Defendant made fourteen purchases of computer parts from plaintiff between May 1996 and December 1997. In each of the transactions, defendant placed an order with plaintiff via phone or e-mail, and plaintiff shipped the goods to France. Plaintiff included a sales invoice and a user's manual with each shipment. The sales invoice and user's manual contained certain terms and conditions, including a limited warranty and limitations of liability.

Beginning in 1998, defendant allegedly experienced electrical problems with some of the parts that it had purchased from plaintiff; specifically, some of the parts caught fire. Defendant demanded $200,400 in replacement costs, and consequential damages of approximately $6,000,000. Plaintiff rejected the demand and claimed that, based on the limited warranty contained in the sales invoices and the consequential damages waiver found in the user's manual, defendant's sole remedy was the repair and replacement of any malfunctioning parts.

In December 1998 defendant filed an action in France in the Tribunal de Commerce de Bobginy (the "French Commercial Court.") The French case has been ongoing since that time and plaintiff has been participating in it. The parties disagree on the posture and scope of the French case. Plaintiff contends that it is an "interim relief procedure" that has no judicial effect. Defendant argues that it is a legal proceeding wherein the parties can be afforded complete relief.

Plaintiff filed this action on January 20, 2000, more than a year after the French action began. The complaint seeks a declaration that: (1) the computer parts were not defective; (2) the parts failed as a result of defendant's misuse, and (3) even if plaintiff were at fault, defendant's sole remedy is for repair or replacement. Jurisdiction is based on the Declaratory Judgment Act; 28 U.S.C. § 2201, *et seq.*

Plaintiff now moves for partial summary adjudication, solely on the issue of what remedy is available to defendant. Defendant opposes the motion for partial summary adjudication, and moves for a stay or dismissal based on the first-filed French case.

## II.

■ Defendant bases its motion to stay or dismiss on the principle of "International Abstention." The international abstention doctrine allows a court to stay or dismiss an action where parallel proceedings are pending in the court of a foreign nation. *See* Schwarzer et al., Federal Civil Procedure Before Trial, ¶ 2:1326.4 (2000). International abstention is rooted in concerns of international comity, judicial efficiency and fairness to litigants. *Id.* In short, the doctrine allows a court to abstain from hearing an action if there is a first-filed foreign proceeding elsewhere. *Id.* The doctrine has been expressly adopted by the Eleventh and Seventh Circuits. *See Turner Entertainment Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1523 (11th Cir.1994); *Finova Capital Corp. v. Ryan Helicopters, U.S.A. Inc.*, 180 F.3d 896, 900–901 (7th Cir.1999).

The Ninth Circuit has not ruled on international abstention. While the facts of this case appear to fit neatly with the doctrine as expressed by the *Turner* and

*Finova* courts, it is unnecessary for this court to go that far. Instead, defendant's motion can be resolved by considering the discretionary nature of the jurisdiction of this court under the Declaratory Judgment Act.

### A.

■ Under the Act, a district court may decline to exercise jurisdiction over a declaratory action, even though subject matter jurisdiction is otherwise proper. *See* 28 U.S.C. § 2201(a); *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). In enacting the Declaratory Judgment Act, "Congress ... created an opportunity, rather than a duty, [for a district court] to grant a new form of relief to qualifying litigants." *See Wilton v. Seven Falls Co.,* 515 U.S. 277, 288, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995).

■ A district court's discretion to decline jurisdiction under the Act is broader than any abstention doctrine recognized by the U.S. Supreme Court. In *Wilton,* the Court explained that "[d]istinct features of the Declaratory Judgment Act, we believe, justify a standard vesting district courts with greater discretion in declaratory judgment actions than that permitted under the 'exceptional circumstances' test of *Colorado River* and *Moses H. Cone.*" *See Wilton,* 515 U.S. at 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995).

■ In determining whether to exercise its discretion not to hear a case, a court must first "determine whether there are any *independent claims* in the case that exist apart from purely declaratory relief, that is, claims that would continue to exist if the request for a declaration simply dropped from the case." (emphasis added). *See Snodgrass v. Provident,* 147 F.3d 1163, 1167–68 (9th Cir.1998). In other words, if a claim for money is brought along with the declaratory claim, the court has no

discretion to decline jurisdiction. *Id.* Next, the court must then consider the factors that guide the exercise of its discretion as set out by the Supreme Court in *Brillhart* and *Wilton.*

In the present action, there are no independent claims. The only claim is one for declaratory relief. *See* Complaint, ¶ 1. Thus, it is appropriate for the court to take the next step and consider the *Brillhart/Wilton* factors that guide its discretion.

■ The "touchstone" factors are that a district court should "avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation." *See Government Employees Ins. Co. v. Dizol,* 133 F.3d 1220, 1225 (9th Cir.1998). Those factors are not exclusive. Other factors that should be considered, depending on the circumstances, include "whether the declaratory action will settle all aspects of the controversy" or "whether the use of a declaratory action will result in entanglement between the federal and state court systems." *Id.* at n. 5. In addition, a district court can also consider "the convenience of the parties, and the availability and relative convenience of other remedies." *Id.* Applying those factors here leads to the conclusion that this court should decline to hear this case in deference to the case being adjudicated in France.

### B.

■ While there are no "state" law issues present here, there is the analogous situation of issues of international law. The parties agree that the United Nations Convention on Contracts for the International Sale of Goods (hereinafter "CISG") governs their transactions. *See* United Nations Convention on Contracts for the

International Sale of Goods, *opened for signature April 11, 1980*, S. Treaty Doc. No. 9, 98th Cong., 1st Sess. 22 (1983) 19 I.L.M. 671, reprinted at, 15 U.S.C. app. 52 (1997). When two foreign nations are signatories to the CISG, as are the United States and France, the CISG governs contracts for the sale of goods between parties whose places of business are in these different nations. *See* CISG, Art. 1. A contract governed by the CISG may include a choice of law provision. If, as here, the agreement is silent as to choice of law, the CISG applies if both parties are located in signatory nations. *See* CISG art. 1; *also Delchi Carrier SpA v. Rotorex Corp.*, 71 F.3d 1024, 1027, n. 1 (2nd Cir. 1995). Thus, the provisions of the CISG directly control. The case law interpreting and applying the CISG is sparse. *Id.* at 1028. As one court which wrestled with the treaty put it, "[d]espite the CISG's broad scope, surprisingly few cases have applied the Convention in the United States." *See MCC–Marble Ceramic Center, Inc. v. Ceramica Nuova d'Agostino, S.p.A.*, 144 F.3d 1384, 1389 (11th Cir.1998).

Application of the CISG here requires a court to resolve an issue of first impression. To wit, the court must determine whether a warranty disclaimer in a purchase order is valid under the CISG. The court has no controlling authority on this issue. Plaintiff contends that Article 35 of the CISG permits warranty disclaimers such as the one at issue. Article 35 however, deals with a seller's obligation to deliver conforming goods. It does not discuss disclaimers. If anything, a disclaimer in this case might not be valid because the CISG requires a "mirror-image" approach to contract negotiations that allows the court to inquire into the subjective intent of the parties. *See* CISG, Art. 8; *also MCC–Marble Ceramic*, 144 F.3d at 1389. Here, defendant has submitted evidence that it was not aware of the disclaimer and that it would not have purchased the goods

had it been aware of the disclaimer. If the defendant was not aware of the disclaimer, then it may not have been valid. Given that this issue of law is unsettled, this factor weighs against this court exercising its discretion to hear the matter in favor of the French court that already has the issue before it.

Plaintiff does not explain why, after participating in the French proceeding for more than one year, a declaratory relief action here is necessary. Defendant has adduced evidence which demonstrates that it does not intend to bring an action in the United States. Moreover, there is additional evidence that plaintiff filed *this* action after receiving an adverse preliminary ruling in the French case. All of this indicates that plaintiff, after participating in the foreign action, initiated this proceeding in the hopes of obtaining a more favorable result in its home forum.

### C.

The record also shows that if this court hears this action, it will undoubtedly lead to duplicative litigation. Plaintiff has been participating in the French proceeding for more than one year. While the scope and effect of that proceeding is disputed, it is clear that it is litigation involving the same parties and the same disputed transaction.

The record of these motions, and the court's own research, demonstrate that the French Commercial Court is a court of competent jurisdiction to hear this dispute and render an enforceable final judgment. French Commercial Courts hear disputes between merchants concerning transactions governed by commercial law. Commercial actions in France, such as the one here, "must" be brought before the Commercial Court in the first instance. *See* "France: Civil Actions and Procedure" *Martindale–Hubbell International Law Digest*, p. FRA–12 (1998). French Com-

mercial Court proceedings can result in a final, enforceable judgment. *See* M. Dakiolias, *Court Performance Around the World: A Comparative Perspective*, 2 Yale Human Rts. & Dev. L.J. 87, 119 (1999). Its judgments can be appealed. *Id.* at 122. While the parties dispute the posture of the French proceeding, it is clear that the French court has made a substantial investigation into the facts of this dispute. It would be unnecessarily duplicative for this court to rule on issues already addressed by the French court.

Issuing the declaratory judgment requested by plaintiff would not "settle all aspects of the controversy" pending in the French case. Such a judgment could also lead to conflicts between the French and U.S. legal systems if the parties attempt to enforce inconsistent judgments.

### D.

The "convenience" factors discussed in *Brillhart* and *Wilton* also militate in favor of declining jurisdiction. All of the evidence concerning the malfunctioning computer parts, including many of the witnesses, are in France. A remedy is available in the French Commercial Court. And the parties have been proceeding there for over a year.

### III.

This court has the discretion to either stay or dismiss the action. *See Wilton*, 515 U.S. at 290, 115 S.Ct. 2137. A dismissal without prejudice is the preferable course here. If either party ultimately prevails in France, as appears likely, then no action in this forum will be necessary.

For the reasons discussed, plaintiff's motion for partial summary adjudication is DENIED, and defendant's motion to dismiss is GRANTED. Plaintiff's later motion for discovery is DENIED as moot. The action is dismissed without prejudice.

IT IS SO ORDERED.