YAHOO!, INC., a Delaware
corporation, Plaintiff,

v.

LA LIGUE CONTRE LE RACISME
ET L'ANTISEMITISME, a French
association, et al., Defendants.

No. C–00–21275 JF.

United States District Court,
N.D. California,
San Jose Division.

Nov. 7, 2001.

Michael Traynor, Benjamin K. Riley, Karen Daly, Laura Pirri, Cooley Godward LLP, San Francisco, CA, Neil Jahss, Robert C. Vanderet, O' Melveny & Myers, Los Angeles, CA, for Plaintiff.

Ronald S. Katz, Coudert Brothers, San Francisco, CA, Richard A. Jones, San Jose, CA, for Defendants.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

FOGEL, District Judge.

Plaintiff moves for summary judgment. Defendants oppose the motion. The Court has read the moving and responding papers and has considered the oral arguments of counsel presented on September 24, 2001. For the reasons set forth below, the motion will be granted.

## I. PROCEDURAL HISTORY

Defendants La Ligue Contre Le Racisme Et l'Antisemitisme ("LICRA") and L'Union Des Etudiants Juifs De France, citizens of France, are non-profit organizations dedicated to eliminating anti-Semitism. Plaintiff Yahoo!, Inc. ("Yahoo!") is a corporation organized under the laws of Delaware with its principal place of business in Santa Clara, California. Yahoo! is an Internet[1] service provider that operates various Internet websites and services that any computer user can access at the Uniform Resource Locator ("URL") *http://www.yahoo.com.* Yahoo! services ending in the suffix, ".com," without an associated country code as a prefix or extension (collectively, "Yahoo!'s U.S. Services") use the English language and target users who are residents of, utilize servers based in and operate under the laws of the United States. Yahoo! subsidiary corporations operate regional Yahoo! sites and services in twenty other nations, including, for example, Yahoo! France, Yahoo! India, and Yahoo! Spain. Each of these regional web sites contains the host nation's unique two-letter code as either a prefix or a suffix in its URL (e.g., Yahoo! France is found at *http://www.yahoo.fr* and Yahoo! Korea at *http://www.yahoo.kr* ). Yahoo!'s regional sites use the local region's primary language, target the local citizenry, and operate under local laws.

Yahoo! provides a variety of means by which people from all over the world can communicate and interact with one anoth-

---

1. The "Internet" and "World Wide Web" are distinct entities, but for the sake of simplicity, the Court will refer to them collectively as the "Internet." Generally speaking, the Internet is a decentralized networking system that links computers and computer networks around the world. The World Wide Web is a publishing forum consisting of millions of individual websites that contain a wide variety of content.

er over the Internet. Examples include an Internet search engine, e-mail, an automated auction site, personal web page hostings, shopping services, chat rooms, and a listing of clubs that individuals can create or join. Any computer user with Internet access is able to post materials on many of these Yahoo! sites, which in turn are instantly accessible by anyone who logs on to Yahoo!'s Internet sites. As relevant here, Yahoo!'s auction site allows anyone to post an item for sale and solicit bids from any computer user from around the globe. Yahoo! records when a posting is made and after the requisite time period lapses sends an e-mail notification to the highest bidder and seller with their respective contact information. Yahoo! is never a party to a transaction, and the buyer and seller are responsible for arranging privately for payment and shipment of goods. Yahoo! monitors the transaction through limited regulation by prohibiting particular items from being sold (such as stolen goods, body parts, prescription and illegal drugs, weapons, and goods violating U.S. copyright laws or the Iranian and Cuban embargos) and by providing a rating system through which buyers and sellers have their transactional behavior evaluated for the benefit of future consumers. Yahoo! informs auction sellers that they must comply with Yahoo!'s policies and may not offer items to buyers in jurisdictions in which the sale of such item violates the jurisdiction's applicable laws. Yahoo! does not actively regulate the content of each posting, and individuals are able to post, and have in fact posted, highly offensive matter, including Nazi-related propaganda and Third Reich memorabilia, on Yahoo!'s auction sites.

On or about April 5, 2000, LICRA sent a "cease and desist" letter to Yahoo!'s Santa Clara headquarters informing Yahoo! that the sale of Nazi and Third Reich related goods through its auction services violates French law. LICRA threatened to take legal action unless Yahoo! took steps to prevent such sales within eight days. Defendants subsequently utilized the United States Marshal's Office to serve Yahoo! with process in California and filed a civil complaint against Yahoo! in the Tribunal de Grande Instance de Paris (the "French Court").

The French Court found that approximately 1,000 Nazi and Third Reich related objects, including Adolf Hitler's *Mein Kampf, The Protocol of the Elders of Zion* (an infamous anti-Semitic report produced by the Czarist secret police in the early 1900's), and purported "evidence" that the gas chambers of the Holocaust did not exist were being offered for sale on Yahoo.com's auction site. Because any French citizen is able to access these materials on Yahoo.com directly or through a link on Yahoo.fr, the French Court concluded that the Yahoo.com auction site violates Section R645–1 of the French Criminal Code, which prohibits exhibition of Nazi propaganda and artifacts for sale.[2] On May 20, 2000, the French Court entered an order requiring Yahoo! to (1) eliminate French citizens' access to any material on the Yahoo.com auction site that offers for sale any Nazi objects, relics, insignia, emblems, and flags; (2) eliminate French citizens' access to web pages on Yahoo.com displaying text, extracts, or quotations from *Mein Kampf* and *Protocol of the Elders of Zion*; (3) post a warning to French citizens on Yahoo.fr that any search through Yahoo.com may lead to sites containing material prohibited by Section R645–1 of the French Criminal Code, and that such viewing of the prohibited material may result in legal action against the Internet user; (4) remove from all browser directories accessible in the

---

**2.** French law also prohibits purchase or possession of such matter within France.

French Republic index headings entitled "negationists" and from all hypertext links the equation of "negationists" under the heading "Holocaust." The order subjects Yahoo! to a penalty of 100,000 Euros for each day that it fails to comply with the order. The order concludes:

> We order the Company YAHOO! Inc. to take all necessary measures to dissuade and render impossible any access via Yahoo.com to the Nazi artifact auction service and to any other site or service that may be construed as constituting an apology for Nazism or a contesting of Nazi crimes.

High Court of Paris, May 22, 2000, Interim Court Order No. 00/05308, 00/05309 (translation attested accurate by Isabelle Camus, February 16, 2001). The French Court set a return date in July 2000 for Yahoo! to demonstrate its compliance with the order.

Yahoo! asked the French Court to reconsider the terms of the order, claiming that although it easily could post the required warning on Yahoo.fr, compliance with the order's requirements with respect to Yahoo.com was technologically impossible. The French Court sought expert opinion on the matter and on November 20, 2000 "reaffirmed" its order of May 22. The French Court ordered Yahoo! to comply with the May 22 order within three (3) months or face a penalty of 100,000 Francs (approximately U.S. $13,300) for each day of non-compliance. The French Court also provided that penalties assessed against Yahoo! Inc. may not be collected from Yahoo! France. Defendants again utilized the United States Marshal's Office to serve Yahoo! in California with the French Order.

Yahoo! subsequently posted the required warning and prohibited postings in violation of Section R645–1 of the French Criminal Code from appearing on Yahoo.fr. Yahoo! also amended the auction policy of Yahoo.com to prohibit individuals from auctioning:

> Any item that promotes, glorifies, or is directly associated with groups or individuals known principally for hateful or violent positions or acts, such as Nazis or the Ku Klux Klan. Official government-issue stamps and coins are not prohibited under this policy. Expressive media, such as books and films, may be subject to more permissive standards as determined by Yahoo! in its sole discretion.

*Yahoo Auction Guidelines* (visited Oct. 23, 2001) <http://user.auctions.Yahoo.com/html/guidelines.html>. Notwithstanding these actions, the Yahoo.com auction site still offers certain items for sale (such as stamps, coins, and a copy of *Mein Kampf)* which appear to violate the French Order.[3] While Yahoo! has removed the *Protocol of the Elders of Zion* from its auction site, it has not prevented access to numerous other sites which reasonably "may be construed as constituting an apology for Nazism or a contesting of Nazi crimes." [4]

Yahoo! claims that because it lacks the technology to block French citizens from accessing the Yahoo.com auction site to view materials which violate the French

---

**3.** The Court takes judicial notice that on October 24, 2001, the key word "nazi" on the Yahoo.com auction site search engine called up sixty-nine Nazi-related items for sale, most of which were stamps and coins from the Third Reich. One copy of *Mein Kampf* was for sale.

**4.** The Court also takes judicial notice that on October 24, 2001, a search on Yahoo.com of "Jewish conspiracy" produced 3,070 sites, the search "Protocols/10 Zion produced 3,560 sites, and the search" "Holocaust /5 'did not happen,'" produced 821 sites. The search "National Socialist Party" led to a website of an organization promoting modern day Nazism.

Order or from accessing other Nazi-based content of websites on Yahoo.com, it cannot comply with the French order without banning Nazi-related material from Yahoo.com altogether. Yahoo! contends that such a ban would infringe impermissibly upon its rights under the First Amendment to the United States Constitution. Accordingly, Yahoo! filed a complaint in this Court seeking a declaratory judgment that the French Court's orders are neither cognizable nor enforceable under the laws of the United States.

Defendants immediately moved to dismiss on the basis that this Court lacks personal jurisdiction over them. That motion was denied.[5] Defendants' request that the Court certify its jurisdictional determination for interlocutory appeal was denied without prejudice pending the outcome of Yahoo!'s motion for summary judgment.

## II. OVERVIEW

As this Court and others have observed, the instant case presents novel and important issues arising from the global reach of the Internet. Indeed, the specific facts of this case implicate issues of policy, politics, and culture that are beyond the purview of one nation's judiciary. Thus it is critical that the Court define at the outset what is and is not at stake in the present proceeding.

This case is *not* about the moral acceptability of promoting the symbols or propaganda of Nazism. Most would agree that such acts are profoundly offensive. By any reasonable standard of morality, the Nazis were responsible for one of the worst displays of inhumanity in recorded history. This Court is acutely mindful of the emotional pain reminders of the Nazi era cause to Holocaust survivors and deeply respectful of the motivations of the French Republic in enacting the underlying statutes and of the defendant organizations in seeking relief under those statutes. Vigilance is the key to preventing atrocities such as the Holocaust from occurring again.

Nor is this case about the right of France or any other nation to determine its own law and social policies. A basic function of a sovereign state is to determine by law what forms of speech and conduct are acceptable within its borders. In this instance, as a nation whose citizens suffered the effects of Nazism in ways that are incomprehensible to most Americans, France clearly has the right to enact and enforce laws such as those relied upon by the French Court here.[6]

What *is* at issue here is whether it is consistent with the Constitution and laws of the United States for another nation to regulate speech by a United States resident within the United States on the basis that such speech can be accessed by Internet users in that nation. In a world in which ideas and information transcend borders and the Internet in particular renders the physical distance between speaker and audience virtually meaningless, the implications of this question go far beyond the facts of this case. The modern world is home to widely varied cultures with radically divergent value systems. There is little doubt that Internet users in the United States routinely engage in speech that violates, for example, China's laws against religious expression, the laws of

---

**5.** *See Yahoo!, Inc. v. La Ligue Contra Le Racisme et L'Antisemitisme,* 145 F.Supp.2d 1168 (N.D.Cal.2001).

**6.** In particular, there is no doubt that France may and will continue to ban the purchase and possession within its borders of Nazi and Third Reich related matter and to seek criminal sanctions against those who violate the law.

various nations against advocacy of gender equality or homosexuality, or even the United Kingdom's restrictions on freedom of the press. If the government or another party in one of these sovereign nations were to seek enforcement of such laws against Yahoo! or another U.S.-based Internet service provider, what principles should guide the court's analysis?

The Court has stated that it must and will decide this case in accordance with the Constitution and laws of the United States. It recognizes that in so doing, it necessarily adopts certain value judgments embedded in those enactments, including the fundamental judgment expressed in the First Amendment that it is preferable to permit the non-violent expression of offensive viewpoints rather than to impose viewpoint-based governmental regulation upon speech. The government and people of France have made a different judgment based upon their own experience. In undertaking its inquiry as to the proper application of the laws of the United States, the Court intends no disrespect for that judgment or for the experience that has informed it.

### III. LEGAL STANDARDS

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of informing the Court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the moving party meets this initial burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *Anderson*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202; *Barlow v. Ground*, 943 F.2d 1132, 1134–36 (9th Cir.1991).

### IV. LEGAL ISSUES

#### A. Actual Controversy

 The Declaratory Judgment Act protects potential defendants from multiple actions by providing a means by which a court declares in one action the rights and obligations of the litigants. 28 U.S.C. § 2201. A declaratory judgment will not expand a federal court's jurisdiction, but if jurisdiction exists, litigants have earlier access to federal courts to spare potential defendants from the threat of impending litigation. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); *Seattle Audubon Soc'y v. Moseley*, 80 F.3d 1401, 1405 (9th Cir. 1996). Declaratory judgment actions are justiciable only if there is an "actual controversy." 28 U.S.C. § 2201(a). The "actual controversy" requirement is analyzed in the same manner as the "case or controversy" standard under Article III of the United States Constitution. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–40, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

 The threshold question in any declaratory action thus is whether "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the

issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941); *National Basketball Ass'n v. SDC Basketball Club, Inc.*, 815 F.2d 562, 565 (9th Cir.1987). The "[m]ere possibility, even probability, that a person may in the future be adversely affected by official acts not yet threatened does not create an 'actual controversy' which is a prerequisite created by the clear language of the [Declaratory Judgment Act]...." *Garcia v. Brownell*, 236 F.2d 356, 358 (9th Cir.1956) *cert. denied*, 362 U.S. 963, 80 S.Ct. 880, 4 L.Ed.2d 878 (1960). The party invoking federal jurisdiction bears the burden of showing that it faces an immediate or actual injury. *Rincon Band of Mission Indians v. County of San Diego*, 495 F.2d 1, 5 (9th Cir.1974), *cert. denied*, 419 U.S. 1008, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974).

### 1. Status of the French Order

■ Defendants contend that the "actual controversy" requirement is not met in the instant case. They point out that Yahoo! appealed the French Court's initial order of May 22, 2000, and that a successful appeal would nullify the order of November 20, 2000 that "reaffirmed" the May 22 order. They argue that even if the May 22 order is upheld on appeal, the French court may find that Yahoo! has substantially complied with the order. Alternatively, they assert that they themselves may elect not to initiate the complex process the French Court would use to fix an actual penalty, and that until that process is completed, there is no order that could be enforced against Yahoo! in the United States. Finally, Defendants offer declarations to the effect that they view Yahoo!'s revised policies with respect to its auction site and removal of *Protocol of the*

*Elders of Zion* from its host sites as substantial compliance with the French order and that accordingly they have no present intention of taking legal action against Yahoo! in the United States.

While these points are facially appealing and suggest a way for the Court to avoid deciding the sensitive and controversial issues presented herein, the facts in the record do not support Defendants' position. First, there are no relevant appellate proceedings presently pending in France. In its order of November 20, 2000, the French Court determined that Yahoo! is technologically and legally capable of complying with the May 22 order and that Yahoo! is subject to a fine of approximately $13,000 for each day of noncompliance. That order was not appealed, and the record indicates that Yahoo! withdrew its appeal of the May 22 order on May 28, 2001 (Supp. Dec. of Mary Catherine Wirth, Exhibit A, Aug. 19, 2001).

Second, the fact that any penalty against Yahoo! is provisional and would require further legal proceedings in France prior to any enforcement action in the United States does not mean that Yahoo! does not face a present and ongoing threat from the existing French order. At oral argument, Defendants did not dispute that if the penalty enforcement process were initiated, the French Court could assess penalties retroactively for the entire period of Yahoo!'s non-compliance. Despite their declarations to the effect that they are satisfied with Yahoo!'s efforts to comply with the French order, Defendants have not taken steps available to them under French law to seek withdrawal of the order or to petition the French court to absolve Yahoo! from any penalty.[7] *See Societe de Conditionnement en Alumini-*

---

7. The Court inquired at oral argument whether Defendants would be willing to take such steps in order to avoid the necessity of the present adjudication but has received no indication to date that they would.

*um v. Hunter Engineering Co., Inc.*, 655 F.2d 938, 945 (9th Cir.1981) ("It is not relevant that Hunter attempted to withdraw its 'threat' after the filing of this lawsuit. We do think it relevant, in the light of the circumstances, that Hunter has not indicated that it will not sue SCAL for infringement or in any other manner agree to a non-adversary position with respect to the patent.").

Third, it is by no means clear that Yahoo! can rely upon the assessment in Defendants' declarations that it is in "substantial compliance" with the French order. The French Court has not made such a finding, nor have Defendants requested or stipulated that such a finding be made. As set forth earlier, Yahoo.com continues to offer at least some Third Reich memorabilia as well as *Mein Kampf* on its auction site and permits access to numerous web pages with Nazi-related and anti-Semitic content. The fact that the Yahoo! does not know whether its efforts to date have met the French Court's mandate is the precise harm against which the Declaratory Judgment Act is designed to protect.

> The Declaratory Judgment Act was designed to relieve potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure or never. The Act permits parties so situated to forestall the accrual of potential damages by suing for a declaratory judgment, once the adverse positions have crystallized and the conflict of interests is real and immediate.

*Japan Gas Lighter Ass'n. v. Ronson Corp.*, 257 F.Supp. 219, 237 (D.N.J.1966).

### 2. Real and Immediate Threat

■■■ The French order prohibits the sale or display of items based on their association with a particular political organization and bans the display of websites based on the authors' viewpoint with re-

spect to the Holocaust and anti-Semitism. A United States court constitutionally could not make such an order. *Shelley v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). The First Amendment does not permit the government to engage in viewpoint-based regulation of speech absent a compelling governmental interest, such as averting a clear and present danger of imminent violence. *R.A.V. v. City of St. Paul*, 505 U.S. 377, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992); *Simon & Schuster, Inc. v. Members of New York State Crime Victims Board*, 502 U.S. 105, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991); *Boos v. Barry*, 485 U.S. 312, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988); *Police Dept. v. Mosley*, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972); *Brandenburg v. Ohio*, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969); *Kingsley Int'l Pictures Corp. v. Regents*, 360 U.S. 684, 79 S.Ct. 1362, 3 L.Ed.2d 1512 (1959). In addition, the French Court's mandate that Yahoo! "take all necessary measures to dissuade and render impossible any access via Yahoo.com to the Nazi artifact auction service and to any other site or service that may be construed as constituting an apology for Nazism or a contesting of Nazi crimes" is far too general and imprecise to survive the strict scrutiny required by the First Amendment. The phrase, "and any other site or service that *may be construed* as an apology for Nazism or a contesting of Nazi crimes" fails to provide Yahoo! with a sufficiently definite warning as to what is proscribed. *See, e.g., Coates v. Cincinnati*, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971). Phrases such as "all necessary measures" and "render impossible" instruct Yahoo! to undertake efforts that will impermissibly chill and perhaps even censor protected speech. *See Board of Airport Commissioners v. Jews for Jesus*, 482 U.S. 569, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987); *Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103,

31 L.Ed.2d 408 (1972). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) *citing New York Times Co. v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971).

Rather than argue directly that the French order somehow could be enforced in the United States in a manner consistent with the First Amendment,[8] Defendants argue instead that at present there is no real or immediate threat to Yahoo!'s First Amendment rights because the French order cannot be enforced at all until after the cumbersome process of petitioning the French court to fix a penalty has been completed. They analogize this case to *Int'l Soc. for Krishna Consciousness of California, Inc. v. City of Los Angeles*, 611 F.Supp. 315, 319–20 (C.D.Cal. 1984), in which the City of Los Angeles sought a declaratory judgment that a resolution limiting speech activities adopted by its Board of Airport Examiners was constitutional. The district court concluded that the action was unripe because the resolution could not take effect without ratification by the City Council, which had not yet occurred. The cases, however, are distinguishable. While Defendants present evidence that further procedural steps in France are required before an actual penalty can be fixed, there is no dispute that the French order is valid under French law and that the French Court may fix a penalty retroactive to the date of the order. The essence of the holding in the *Krishna Consciousness* case is that the subject resolution had no legal effect at all.

Defendants also claim that there is no real or immediate threat to Yahoo! because they do not presently intend to seek en-

forcement of the French order in the United States. In *Salvation Army v. Department of Community Affairs of the State of New Jersey*, 919 F.2d 183 (3rd Cir.1990), a religious group that operated a family center for disadvantaged persons claimed a state statute regulating boarding houses violated its right to the free exercise of religion. After the group brought suit, the state authorities agreed outside of the judicial proceedings to exempt the group from some of the provisions. The district court then granted summary judgment and dismissed the action. On appeal, the group claimed it still faced uncertainty with respect to future enforcement of the statute because the exemptions were not legally binding and the regulations in their entirety impermissibly intruded upon its First Amendment rights. The Court of Appeals for the Third Circuit agreed with the trial court that there was no immediate threat to the group because the state had provided an express assurance that it would not enforce any of the waived provisions, no criminal penalties could be imposed under the statute unless additional steps were taken by the state, the state could not impose fines without giving notice and opportunity to comply, and there was no evidence that the group's First Amendment rights actually would be affected by the threat of future law suits.

*Salvation Army* is distinguishable from this case in several significant respects. First, the New Jersey statute's penalties were "enforceable by the defendants only prospectively..." *Salvation Army*, 919 F.2d at 192. The French order permits *retroactive* penalties. Second, while the exemptions granted to the Salvation Army allowed it to maintain the status quo, the French order had the immediate effect of

---

**8.** As is discussed below, Defendants do argue unpersuasively that further discovery might

affect the First Amendment analysis.

inducing Yahoo! to implement new restrictive policies on its auction site. Third, while the perceived threat to the Salvation Army was the potential withdrawal of the exemptions in the future, the provisions of the French order that require Yahoo! to regulate the content of its websites on Yahoo.com never have been waived, suspended or stayed and apparently remain in full force and effect. Under these circumstances, Defendants' assurances that they do not intend to enforce the order at the present time do not remove the threat that they may yet seek sanctions against Yahoo!'s *present and ongoing* conduct[9]. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 154, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) ("There is no question in the present case that petitioners have sufficient standing as plaintiffs: the regulation is directed at them in particular; it requires them to make significant changes in their everyday business practices; if they fail to observe the Commissioner's rule they are quite clearly exposed to the imposition of strong sanctions."); *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993) (construing *Abbott Laboratories* to mean that if "[p]romulgation of the challenged regulations present[s] plaintiffs with the immediate dilemma to choose between complying with newly imposed, disadvantageous restrictions and risking serious penalties for violation," the controversy is ripe).

### 3. Abstention.

■ Defendants next argue that this Court should abstain from deciding the instant case because Yahoo! simply is un-happy with the outcome of the French litigation and is trying to obtain a more favorable result here. Indeed, abstention is an appropriate remedy for international forum-shopping. In *Supermicro Computer, Inc. v. Digitechnic, S.A.*, 145 F.Supp.2d 1147 (N.D.Cal.2001), a California manufacturer was sued by a corporate customer in France for selling a defective product. The California company sought a declaratory judgment in the United States that its products were not defective, that the French customer's misuse of the product caused the product to fail, and that if the California company was at fault, only limited legal remedies were available. The court concluded that the purpose of the action for declaratory relief was to avoid an unfavorable result in the French courts. It noted that the action was not filed until a year after the French proceedings began, that the French proceedings were still ongoing, and that the French defendants had no intent to sue in the United States. It concluded that the declaratory relief action clearly was "litigation involving the same parties and the same disputed transaction." *Id.*, at 1152.

■ In the present case, the French court has determined that Yahoo!'s auction site and website hostings on Yahoo.com violate French law. Nothing in Yahoo!'s suit for declaratory relief in this Court appears to be an attempt to relitigate or disturb the French court's application of French law or its orders with respect to Yahoo!'s conduct in France.[10] Rather, the purpose of the present action is to determine whether a United States court may

---

9. Again, it would appear that legal means are available to Defendants both in France and in this Court to eliminate such a threat, but as yet Defendants have not availed themselves of these procedures.

10. Arguably, Yahoo! does seek to relitigate the French court's factual determination that Ya-hoo! does possess the technology to comply with the French order. For the reasons discussed herein, the Court concludes that Yahoo!'s ability to comply with the order is immaterial to the question of whether enforcement of the order in the United States would be constitutional.

enforce the French order without running afoul of the First Amendment. The actions involve distinct legal issues, and as this Court concluded in its jurisdictional order, a United States court is best situated to determine the application of the United States Constitution to the facts presented.[11] No basis for abstention has been established.

### 4. Comity

■■■■■ No legal judgment has any effect, of its own force, beyond the limits of the sovereignty from which its authority is derived. 28 U.S.C. § 1738. However, the United States Constitution and implementing legislation require that full faith and credit be given to judgments of sister states, territories, and possessions of the United States. U.S. Const. art. IV, §§ 1, cl. 1; 28 U.S.C. § 1738. The extent to which the United States, or any state, honors the judicial decrees of foreign nations is a matter of choice, governed by "the comity of nations." *Hilton v. Guyot,* 159 U.S. 113, 163, 16 S.Ct. 139, 40 L.Ed. 95 (1895). Comity "is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other." *Hilton,* 159 U.S. at 163–64, 16 S.Ct. 139 (1895). United States courts generally recognize foreign judgments and decrees unless enforcement would be prejudicial or contrary to the country's interests. *Somportex Ltd. v. Philadelphia Chewing Gum Corp.,* 453 F.2d 435, 440 (3d Cir.1971) *cert. denied,* 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972); *Laker Airways v. Sabena Belgian World Airlines,* 731 F.2d 909, 931 (D.C.Cir.1984) ("[T]he court is not required to give effect to foreign judicial proceedings grounded on policies which do violence to its own fundamental interests."); *Tahan v. Hodg-*

*son,* 662 F.2d 862, 864 (D.C.Cir.1981) ("[R]equirements for enforcement of a foreign judgment expressed in *Hilton* are that ... the original claim not violate American public policy ... that it not be repugnant to fundamental notions of what is decent and just in the State where enforcement is sought.").

■■■■ As discussed previously, the French order's content and viewpoint-based regulation of the web pages and auction site on Yahoo.com, while entitled to great deference as an articulation of French law, clearly would be inconsistent with the First Amendment if mandated by a court in the United States. What makes this case uniquely challenging is that the Internet in effect allows one to speak in more than one place at the same time. Although France has the sovereign right to regulate what speech is permissible in France, this Court may not enforce a foreign order that violates the protections of the United States Constitution by chilling protected speech that occurs simultaneously within our borders. *See, e.g., Matusevitch v. Telnikoff,* 877 F.Supp. 1, 4 (D.D.C. 1995) (declining to enforce British libel judgment because British libel standards "deprive the plaintiff of his constitutional rights"); *Bachchan v. India Abroad Publications, Inc.,* 154 Misc.2d 228, 585 N.Y.S.2d 661 (Sup.Ct.1992) (declining to enforce a British libel judgment because of its "chilling effect" on the First Amendment); *see also, Abdullah v. Sheridan Square Press, Inc.,* No. 93 Civ. 2515, 1994 WL 419847 (S.D.N.Y. May 4, 1994) (dismissing a libel claim brought under English law because "establishment of a claim for libel under the British law of defamation would be antithetical to the First Amendment protection accorded to the de-

---

11. *Yahoo!, Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme,* 145 F.Supp 2d. 1168, 1179 (N.D.Cal.2001).

fendants."). The reason for limiting comity in this area is sound. "The protection to free speech and the press embodied in [the First] amendment would be seriously jeopardized by the entry of foreign [ ] judgments granted pursuant to standards deemed appropriate in [another country] but considered antithetical to the protections afforded the press by the U.S. Constitution." *Bachchan,* 585 N.Y.S.2d at 665. Absent a body of law that establishes international standards with respect to speech on the Internet and an appropriate treaty or legislation addressing enforcement of such standards to speech originating within the United States, the principle of comity is outweighed by the Court's obligation to uphold the First Amendment.[12]

**B. Rule 56(f)**

 FED. R. CIV. P. 56(f) permits a court either to postpone determination of a motion for summary judgment or to deny such motion pending further discovery. A court may take such action when "it appear[s] from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition." FED. R. CIV. P. 56(f). To justify a continuance, the Rule 56(f) motion must demonstrate 1) why the movant needs additional discovery and 2) how the additional discovery likely will create a genuine issue of material fact. *Krim v. BancTexas Group, Inc.,* 989 F.2d 1435, 1442 (5th Cir. 1993).

Defendants assert that further discovery may lead to the development of triable issues of fact concerning the extent to which Yahoo!'s modifications to its auction site have affected its potential liability under the French order and as to Yahoo!'s

technological ability to comply with the order. Defendants contend that these issues are material because the law is unsettled as to whether the First Amendment protects speech originating within the United States that is expressly targeted at a foreign market. In *Desai v. Hersh,* 719 F.Supp. 670, 676 (N.D.Ill.1989) *aff'd,* 954 F.2d 1408 (7th Cir.1992), an author published a book in the United States about former Secretary of State Henry Kissinger. A former Indian government official who was mentioned in the book brought a defamation action in the United States, seeking to apply Indian law. Although it held that the First Amendment applied extraterritorially to publication of the book and therefore refused to apply Indian defamation law, it also commented that "for purposes of suits brought in United States courts, first amendment protections do not apply to all extraterritorial publications by persons under the protections of the Constitution." *Id.,* 719 F.Supp. at 676.

 Relying upon this dictum, Defendants suggest that discovery may produce additional evidence that would preclude summary judgment on First Amendment grounds. However, unlike the defendant in *Desai,* who claimed protection under the First Amendment for his extraterritorial conduct, Yahoo! seeks protection for its actions *in the United States,* specifically the ways in which it configures and operates its auction and Yahoo.com sites. Moreover, the French order requires Yahoo! not only to render it impossible for French citizens to access the proscribed content but also to interpret an impermissibly overbroad and vague definition of the content that is proscribed. If a hypothetical party were physically present in France engaging in expression that was

---

**12.** The Court expresses no opinion as to whether any such treaty or legislation would or could be constitutional.

illegal in France but legal in the United States, it is unlikely that a United States court would or could question the applicability of French law to that party's conduct. However, an entirely different case would be presented if the French court ordered the party not to engage in the same expression in the United States on the basis that French citizens (along with anyone else in the world with the means to do so) later could read, hear or see it. While the advent of the Internet effectively has removed the physical and temporal elements of this hypothetical, the legal analysis is the same.

In light of the Court's conclusion that enforcement of the French order by a United States court would be inconsistent with the First Amendment, the factual question of whether Yahoo! possesses the technology to comply with the order is immaterial. Even assuming for purposes of the present motion that Yahoo! does possess such technology,[13] compliance still would involve an impermissible restriction on speech. Accordingly, Defendants' motion pursuant to Rule 56(f) motion will be denied.

## V. CONCLUSION

Yahoo! seeks a declaration from this Court that the First Amendment precludes enforcement within the United States of a French order intended to regulate the content of its speech over the Internet. Yahoo! has shown that the French order is valid under the laws of France, that it may be enforced with retroactive penalties, and that the ongoing possibility of its enforcement in the United States chills Yahoo!'s First Amendment rights. Yahoo! also has shown that an actual controversy exists and that the threat to its constitutional rights is real and immediate. Defendants

have failed to show the existence of a genuine issue of material fact or to identify any such issue the existence of which could be shown through further discovery. Accordingly, the motion for summary judgment will be granted. The Clerk shall enter judgment and close the file.

IT IS SO ORDERED.

---

13. As noted earlier, the French court expressly found against Yahoo! as to this point in its

order of November 20, 2000.