*229 OPINION OF THE COURT
Shirley Fingerhood, J.
Although the cases interpreting constitutional limitations on libel actions are legion, this is apparently the first time that a New York court has been asked to apply those limitations to bar the enforcement of a foreign judgment.
The judgment was granted in an action brought in the High Court of Justice in London, England, by an Indian national against the New York operator of a news service which transmits reports only to a news service in India. The story held to be defamatory was written by a reporter in London, wired by defendant to the news service in India which sent it to newspapers there. It was reported in two Indian newspapers, copies of which were distributed in the United Kingdom.
The story was also reported in an issue of India Abroad, defendant’s New York newspaper. An edition of India Abroad was printed and distributed in the United Kingdom by defendant’s English subsidiary, India Abroad (U.K.) and a claim based on that distribution was asserted in the lawsuit approximately a year after its commencement.
The wire service story transmitted by defendant on January 31, 1990 stated that Dagens Nyjeter, a Swedish daily newspaper, (hereinafter DN) had reported that Swiss authorities had frozen an account belonging to plaintiff to which money was transferred from a coded account into which commissions paid by Bofars were deposited. Bofars is a Swedish arms company, which some time before had been charged with paying kickbacks to obtain a large munitions contract with the Indian government. Plaintiff’s name had previously been mentioned in connection with the scandal in a variety of Indian and other publications. On February 3, 1990, defendant’s wire service transmitted plaintiffs denial that he was the holder of such a bank account or that he or any member of his family had any connection with the Bofars contract.
Plaintiff brought an action against DN in London at the same time as it sued India Abroad Publications Incorporated. DN settled the claim against it by paying a sum of money and issuing an apology saying that it had been misled by Indian government sources. India Abroad did not apologize but did report DN’s settlement and apology.
The jury assessed 40,000 pounds in damages for the wire service story together with attorney’s fees against India Abroad Publications Incorporated and its reporter, Rahul *230 Bedi. As authorized by CPLR 5303 plaintiff seeks to enforce that judgment by motion for summary judgment in lieu of complaint. (A 40,000 pound judgment granted against India Abroad, U.K. for its distribution of the English edition of India Abroad is not directly at issue here.)
Entry of the judgment is opposed on the ground that it was imposed without the safeguards for freedom of speech and the press required by the First Amendment of the US Constitution and NY Constitution, article I, § 8. Defendant asks this court to reject the judgment as repugnant to public policy, a ground for nonrecognition of foreign judgments under CPLR 5304 (b) (4).
CPLR 5304 is comprised of two parts: subdivision (a) which is explicitly mandatory and precludes recognition of foreign judgments on certain constitutional grounds, i.e., if the procedures pursuant to which a foreign judgment was rendered are not compatible with the requirements of due process of law or when the foreign court did not have personal jurisdiction over the defendant; and subdivision (b) which provides that a foreign judgment "need not be recognized if,” inter alla, "the cause of action on which the judgment is based is repugnant to the public policy of this state” (CPLR 5304 [b] [4]).
It is plaintiff’s position that the public policy exception to the rule that foreign judgments are afforded comity is narrow and inapplicable here. He asserts that this court should not reexamine the claim for which the judgment was awarded to determine whether it would be culpable under United States precedents. Pointing to CPLR 5304 (b) (4)’s reference to "cause[s] of action” rather than judgments, he argues that libel causes of action are cognizable in New York. If that paragraph is deemed to refer to judgments as well as causes of action, plaintiff asks this court to exercise its discretion to recognize the judgment in view of the common antecedents of the law of Great Britain and that of the United States.
It is doubtful whether this court has discretion to enforce the judgment if the action in which it was rendered failed to comport with the constitutional standards for adjudicating libel claims. In his commentary on CPLR 5304, David D. Siegel notes that one of the grounds for nonrecognition of a foreign judgment in subdivision (b), a lack of fair notice in sufficient time to enable a defendant to defend, "goes to the roots of due process.” (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C5304:1, at 493.) For *231 that reason, he suggests that a refusal to recognize a foreign country judgment for lack of fair notice may be constitutionally mandatory, rather than, as subdivision (b) would have it, discretionary. (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C5304:1, at 492.) Similarly, if, as claimed by defendant, the public policy to which the foreign judgment is repugnant is embodied in the First Amendment of the US Constitution or the free speech guarantee of the NY Constitution, the refusal to recognize the judgment should be, and it is deemed to be, "constitutionally mandatory.” Accordingly, the libel law applied by the High Court of Justice in London in granting judgment to plaintiff will be reviewed to ascertain whether its provisions meet the safeguards for the press which have been enunciated by the courts of this country.
Both parties submitted descriptions of the defamation laws of England in affidavits and affirmations by English solicitors and barristers with copies of relevant statutes, rules and case law. Pursuant to CPLR 4511 the court will take judicial notice of the law as set forth in the affirmations of Sarosh Zaiwalla and Charles Anthony St. John Gray, plaintiff’s solicitor and barrister, and Geoffrey Robertson, Q.C., for the defendant. The instructions given to the jury by the presiding Judge at the trial of plaintiff’s claim, Mr. Justice Otten, have also been considered.
Under English law, any published statement which adversely affects a person’s reputation, or the respect in which that person is held, is prima facie defamatory. Plaintiffs’ only burden is to establish that the words complained of refer to them, were published by the defendant, and bear a defamatory meaning. If, as in the present case, statements of fact are concerned, they are presumed to be false and the defendant must plead justification for the issue of truth to be brought before the jury. An unsuccessful defense of justification may result in the award of aggravated damages. For, in the language of Lord Hailsham of the House of Lords in Broome v Cassell & Co. (1 All ER 801, 824 [1972]): "Quite obviously, the award must include factors for injury * * * the absence of apology, or the reaffirmation of the truth of the matter complained of’.
English law does not distinguish between private persons and those who are public figures or are involved in matters of public concern. None are required to prove falsity of the libel or fault on the part of the defendant. No plaintiff is required *232 to prove that a media defendant intentionally or negligently disregarded proper journalistic standards in order to prevail.
The defendant has the burden of proving not only truth but also of establishing entitlement to the qualified privilege for newspaper publications and broadcasters provided by section 7 (3) of the 1952 Defamation Act where the "matter [published] is * * * of public concern and * * * [its] publication * * * is * * * for the public benefit” (emphasis added).*
As stated by Mr. Gray, plaintiffs barrister, "[t]he difference between the American and English jurisdictions essentially comes down to where the burden of proof lies”.
Defendant argues that the defamation law of England fails to meet the constitutional standards required in the United States because plaintiff, a friend of the late Prime Minister of India Rajiv Ghandi and the brother and manager of a movie star and former member of Parliament, is a public figure. In New York Times Co. v Sullivan (376 US 254, 279-280 [1964]), the Supreme Court of the United States ruled that in order to recover damages for defamation a public official must prove by clear and convincing evidence that the defendant published the allegedly defamatory statement with " 'actual malice’— that is, with knowledge that it was false or with reckless disregard of whether it was false or not.” That burden of proof was placed on public figures who sued media defendants in Curtis Publ. Co. v Butts (388 US 130 [1967]).
However, it seems neither necessary nor appropriate to decide whether plaintiff, an Indian national residing in England or Switzerland, is a public figure. Instead, the procedures of the English court will be compared to those which according to decisions of the United States Supreme Court are constitutionally mandated for suits by private persons complaining of press publications of public concern.
In Gertz v Robert Welch, Inc. (418 US 323, 347 [1974]) the court held that a private figure could not recover damages for defamation without showing that a media defendant was at fault, leaving the individual States to "define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual.”
*233 Reviewing the Supreme Court’s decisions enunciating constitutional limitations on suits for defamation, Justice O’Connor stated in Philadelphia Newspapers v Hepps (475 US 767, 775): "One can discern in these decisions two forces that may reshape the common-law landscape to conform to the First Amendment. The first is whether the plaintiff is a public official or figure, or is instead a private figure. The second is whether the speech at issue is of public concern. When the speech is of public concern and the plaintiff is a public official or public figure, the Constitution clearly requires the plaintiff to surmount a much higher barrier before recovering damages from a media, defendant than is raised by the common law. When the speech is of public concern but the plaintiff is a private figure, as in Gertz, the Constitution still supplants the standards of the common law, but the constitutional requirements are, in at least some of their range, less forbidding than when the plaintiff is a public figure and the speech is of public concern.”
The issue in Hepps (supra) was the validity under the First Amendment of the common-law presumption that a defamatory statement is false, pursuant to which the burden of proving truth is on the defendant. Finding plaintiff to be a private figure and the subject of the newspaper articles in issue to be of public concern, the court held that, "the common-law’s rule on falsity — that the defendant must bear the burden of proving truth — must * * * fall here to a constitutional requirement that the plaintiff bear the burden of showing falsity, as well as fault, before recovering damages” (475 US, at 776).
It is obvious that defendant’s publication relates to a matter of public concern. The affidavits and documents submitted by both parties reveal that the wire service report was related to an international scandal which touched major players in Indian politics and was reported in India, Sweden, the United States, England and elsewhere in the world. Consider the revelation of Mr. Zaiwalla, who had the conduct of the action resulting in the English judgment, that it was given priority over other defamation actions waiting to be tried because "the Indian General Election was imminent and the Bofars affairs and the plaintiff’s long-time family friendship with Mr. Rajiv Ghandi, the former prime minister of India * * * and leader of the main opposition party * * * were being used as electoral weapons in India.” Mr. Justice Otten, in his instructions, referred to the political context of the story by suggesting to *234 the jury that it “ignore the complexities” of the Indian politics and political parties which were the background of the news stories.
Placing the burden of proving truth upon media defendants who publish speech of public concern has been held unconstitutional because fear of liability may deter such speech. “Because such a ‘chilling’ effect would be antithetical to the First Amendment’s protection of true speech on matters of public concern, we believe that a private-figure plaintiff must bear the burden of showing that the speech at issue is false before recovering damages for defamation from a media defendant. To do otherwise could ‘only result in a deterrence of speech which the Constitution makes free.’ ” (Philadelphia Newspapers v Hepps, supra, at 777.)
The “chilling” effect is no different where liability results from enforcement in the United States of a foreign judgment obtained where the burden of proving truth is upon media defendants. Accordingly, the failure of Bachchan to prove falsity in the High Court of Justice in England makes his judgment unenforceable here.
There is, of course, another reason why enforcement of the English judgment would violate the First Amendment: in England, plaintiff was not required to and did not meet the “less forbidding” constitutional requirement that a private figure show that a media defendant was at fault.
New York’s standard for liability in actions brought by private persons against the press is set forth in Chapadeau v Utica Observer-Dispatch (38 NY2d 196, 199 [1975]): “[W]here the content of the article is arguably within the sphere of legitimate public concern, which is reasonably related to matters warranting public exposition, the party defamed may recover; however, to warrant such recovery he must establish, by a preponderance of the evidence, that the publisher acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties.”
As stated above, the English courts do not require plaintiff to prove that a press defendant was at fault in any degree. Bachchan certainly did not establish, as required by Chapadeau (supra), that defendant was grossly irresponsible, a difficult task, where defendant disseminates another’s news report. (See, Rust Communication Group v 70 State St. Travel Serv., 122 AD2d 584 [4th Dept 1986].)
*235 It is true that England and the United States share many common-law principles of law. Nevertheless, a significant difference between the two jurisdictions lies in England’s lack of an equivalent to the First Amendment to the US Constitution. The protection to free speech and the press embodied in that amendment would be seriously jeopardized by the entry of foreign libel judgments granted pursuant to standards deemed appropriate in England but considered antithetical to the protections afforded the press by the US Constitution.
For the above-stated reasons, the motion for summary judgment in lieu of complaint is denied.

 That defense is unavailable if the plaintiff requests that explanation or contradiction be published and defendant refuses to do so. Even reports of proceedings of a public nature — of Parliament and of the courts are protected by privilege only "provided they are neither inaccurate nor unfair to the plaintiff.” (Duncan & Neill, Defamation § 14.29, at 103 [1978].)