Sarl Louis Feraud Int'l v. Viewfinder, Inc.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2006

(Argued: January 30, 2007)                    Decided: June 5, 2007)

Docket No. 05-5927-cv

_____

SARL LOUIS FERAUD INTERNATIONAL,

        Plaintiff-Appellant,

S.A. PIERRE BALMAIN,

        Consolidated-Plaintiff-Appellant,

                v.

VIEWFINDER, INC., doing business as Firstview,

        Defendant-Appellee.

_____

Before: POOLER and RAGGI, Circuit Judges, and SAND, District Judge.[*]

_____

Appeal from the United States District Court for the Southern District of New York

(Lynch, J.) dismissing plaintiffs-appellants' action to enforce two foreign judgments on the basis

that enforcement of the foreign judgments would be repugnant to the public policy of New York

under N.Y. C.P.L.R. § 5304(b)(4). Because the record before us does not permit us to determine

_____

[*]The Honorable Leonard B. Sand, United States District Judge for the Southern District of New York, sitting by designation.

1

whether enforcement of the foreign judgments is repugnant to the public policy of New York, we

VACATE the judgment of the district court and REMAND for further proceedings.

JAMES P. DUFFY, III (John Bekian, on the brief), Berg & Duffy LLP, Lake Success, NY, for Appellants.

STEVEN J. HYMAN (Paul H. Levinson and David Blasband, on the brief), McLaughlin & Stern LLP, New York, NY, for Appellee.

Wendy Seltzer, Brooklyn, NY for Amici Curiae Electronic Frontier Foundation, Center for Democracy & Technology, and the American Civil Liberties Union in support of Appellee.

POOLER, Circuit Judge:

Plaintiffs-appellants Sarl Louis Feraud International ("Feraud") and S.A. Pierre Balmain

("Balmain") appeal from the September 29, 2005, order of the United States District Court for

the Southern District of New York (Lynch, J.) dismissing plaintiffs' action to enforce two

judgments issued by the Tribunal de grande instance de Paris ("the French Judgments") against

defendant-appellee Viewfinder, Inc. ("Viewfinder"). Plaintiffs challenge the district court's

conclusion that enforcement of the French Judgments would be repugnant to the public policy of

New York under N.Y. C.P.L.R. § 5304(b)(4) because it would violate Viewfinder's First

Amendment rights. Because the district court did not conduct the full analysis necessary to reach

this conclusion, we vacate its order and remand for further proceedings consistent with this

opinion.

## BACKGROUND

Plaintiffs-appellants Feraud and Balmain are French corporations that design high-fashion

clothing and other items for women. Defendant-appellee Viewfinder is a Delaware corporation

with a principal place of business in New York. Viewfinder operates a website called "firstView.com," on which it posts photographs of fashion shows held by designers around the world, including photographs of plaintiffs' fashion shows. Donald Ashby, the president of Viewfinder, is a professional fashion photographer. Viewfinder styles itself as an Internet fashion magazine akin to the online version of Vogue. The firstView website contains both photographs of the current season's fashions, which may be viewed only upon subscription and payment of a fee, and photographs of past collections, which are available for free. An annual subscription to firstView costs $999. See http://www.firstview.com/subscribe_info.php (last visited June 1, 2007). Users can also view the content for one hour for $5.95. See http://www.firstview.com/subscribe.php (last visited June 1, 2007). Viewfinder does not sell clothing or designs.

In January 2001, Feraud and Balmain, along with several other design houses, each filed suit against Viewfinder in the Tribunal de grande instance de Paris seeking money damages from Viewfinder for alleged unauthorized use of their intellectual property and unfair competition. These civil actions stemmed from Viewfinder displaying photographs of the designers' fashion shows, which revealed designs from their upcoming collection, on the firstView.com website. Viewfinder was served in New York in accordance with the terms of the Hague Convention on the Service of Judicial and Extrajudicial Documents in Civil or Commercial Matters. Viewfinder failed to respond to the complaints, however, and therefore, on May 2, 2001, the French court issued default judgment against Viewfinder. The French court found that plaintiffs' "ready-to-wear" and "haute couture" collections from 1996-2001 were available on the firstView.com website. The court further found that Viewfinder's posting of these photographs of plaintiffs'

3

designs was "without the necessary authorization" and thus "constitute[d] counterfeit and violation of royalties pursuant to articles L 716-1 and L 122-4 of the Intellectual [P]roperty Code." The court also found with respect to each of the plaintiffs that Viewfinder had committed "parasitism" under French law because it had "take[n] advantage of plaintiff's reputation and commercial efforts creating confusion between the two companies." The French court ordered Viewfinder to remove the offending photographs, and awarded damages of 500,000 francs for each plaintiff, costs of the action, and a fine ("astreinte") of 50,000 francs a day for each day Viewfinder failed to comply with the judgment.[1]

On October 6, 2003, Viewfinder appealed these judgments to the Cour d'appel de Paris, but subsequently withdrew its appeal without opposition after plaintiffs filed their brief. The French appellate court accordingly dismissed the appeal in February 2004. In December 2004, plaintiffs filed separate complaints in the United States District Court for the Southern District of New York to enforce the French Judgments. Plaintiffs sought enforcement under New York's Uniform Foreign Money Judgment Recognition Act, which provides that, subject to certain exceptions, foreign judgments that are "final, conclusive and enforceable" in the country where rendered are deemed conclusive between the parties and enforceable by U.S. courts. N.Y. C.P.L.R. §§ 5302, 5303. The district court consolidated these actions and also granted plaintiffs' request for an order of attachment. Federal jurisdiction is based on diversity of citizenship.

On January 18, 2005, Viewfinder filed a motion to dismiss or, in the alternative, a motion

---

[1]In the district court, Viewfinder argued that the French Judgments were not final because of the astreinte. Plaintiffs then commenced proceedings before the Juge de l'exécution of the French court to reduce the astreinte to a fixed amount. Viewfinder no longer contends that the French Judgments are not final.

4

for summary judgment and a motion to vacate the attachment order. Viewfinder raised a variety of arguments in its motion papers, one of which was found meritorious by the district court.[2] The district court found that enforcing the French Judgments would be repugnant to the public policy of New York because it would violate Viewfinder's First Amendment rights. See Sarl Louis Feraud Int'l v. Viewfinder Inc., 406 F. Supp. 2d 274, 281 (S.D.N.Y. 2005). Specifically, the district court found that the fashion shows at issue were public events and Viewfinder had a First Amendment right to publish the photographs at issue. Id. at 282-83. Thus, as the district court concluded, the "First Amendment simply does not permit plaintiffs to stage public events in which the general public has a considerable interest, and then control the way in which information about those events is disseminated in the mass media." Id. at 285. The district court also stated that to the extent that plaintiffs' designs were protected by copyright, "the copyright law similarly provides, as a matter of First Amendment necessity, a 'fair use' exception for the publication of newsworthy matters." Id. at 284. Based on its conclusion that enforcing the judgment would impinge upon Viewfinder's free speech rights, the district court dismissed the action and vacated the order of attachment. Id. at 285. Plaintiffs filed a timely notice of appeal.

**DISCUSSION**

The question presented by this appeal is whether the district court properly found that the French Judgments were unenforceable under New York law. In order to address this question, we begin with the language of the relevant state statute: "A foreign country judgment need not be recognized if . . . the cause of action on which the judgment is based is repugnant to the public

---

[2]On appeal, Viewfinder does not challenge the district court's rejection of its other grounds for dismissal.

5

policy of this state." N.Y. C.P.L.R. § 5304(b)(4) (emphasis added). As the plain language of the statute makes clear, the first step in analyzing whether a judgment is unenforceable under Section 5304(b)(4) is to identify the "cause of action on which the judgment is based." The district court never identified the French statutes that underlie the judgments at issue in this case. Nor does Viewfinder do so in its submission. In fact, Viewfinder contends that "there is simply no way for this Court to know what substantive law was actually applied in France and on what grounds Defendant was found liable." See Br. of Appellee Viewfinder, at 48. We find this argument curious considering that Viewfinder, as the party invoking Section 5304(b), had the burden to prove that the public policy exception applied. See, e.g., CIBC Mellon Trust Co. v. Mora Hotel Corp., 743 N.Y.S.2d 408, 423 (1st Dep't 2002) ("It is undisputed that defendants bear the burden of proving these discretionary grounds for non-recognition [of a foreign judgment]."); Kim v. Coop. Centrale Raiffeisen-Boerenleenbank B.A., 364 F. Supp. 2d 346, 352 (S.D.N.Y. 2005) ("Recognition may be denied if the opposing party can prove . . . that the foreign judgment is repugnant to the public policy of this state.") (internal quotation marks omitted); Bridgeway Corp. v. Citibank, 45 F.Supp. 2d 276, 286 (S.D.N.Y. 1999) ("[T]he defendant opposing enforcement has the burden of proving that a discretionary basis for non-recognition pursuant to CPLR § 5304(b) applies."). In any event, we cannot agree with Viewfinder's contention that it is impossible to discern the causes of action on which the French Judgments were based. The default judgments issued by the French court explicitly state that Viewfinder's actions violated "articles L 716-1 and L 122-4 of the Intellectual Property Code." Article L 122-4 is in Book I, Title II, Chapter II of the French Intellectual Property Code, which are entitled "Copyright," "Authors' Rights," and "Patrimonial Rights," respectively. See Code de la propriete

6

intellectuelle art. L 122-4 (Fr.), available at http://www.legifrance.gouv.fr.  Article L 122-4

provides: "Any complete or partial performance or reproduction made without the consent of the

author or of his successors in title or assigns shall be unlawful."  Id.  This is analogous to the

United States Copyright Act, which defines a copyright infringer as one "who violates any of the

exclusive rights of the copyright owner," 17 U.S.C. § 501, including the rights of reproduction,

performance, and public display.  17 U.S.C. § 106.  Under French copyright law, the "creations

of the seasonal industries of dress and articles of fashion" are entitled to copyright protection.

Code de la propriete intellectuelle art. L 112-2 (Fr.), available at http://www.legifrance.gouv.fr.

The French court found that Viewfinder's publication of numerous photographs depicting

plaintiffs' design collections violated plaintiffs' copyrights.  Furthermore, the French Judgments

concluded that Viewfinder's reproduction and publication of plaintiffs' designs were "without

the necessary authorization."  Thus, it is apparent that the French Judgments were based in part

on a finding of copyright infringement.

We cannot second-guess the French court's finding that Viewfinder's actions were

"without the necessary authorization."  Viewfinder had the opportunity to dispute the factual

basis of plaintiffs' claims in the French court, but it chose not to respond to the complaint.  As

this court has held: "By defaulting [in the foreign adjudication], a defendant ensures that a

judgment will be entered against him, and assumes the risk that an irrevocable mistake of law or

fact may underlie that judgment." Ackermann v. Levine, 788 F.2d 830, 842 (2d Cir. 1986); see

also Clarkson Co. v. Shaheen, 544 F.2d 624, 631 (2d Cir. 1976) ("A foreign judgment may not

be collaterally attacked 'upon the mere assertion of the party that the judgment was erroneous in

law or in fact.'") (quoting Hilton v. Guyot, 159 U.S. 113, 203 (1895)).  Thus, for the purposes of

this action, we must accept that Viewfinder's conduct constitutes an unauthorized reproduction or performance of plaintiffs' copyrighted work infringing on plaintiffs' intellectual property rights, and the only question to consider is whether a law that sanctions such conduct is repugnant to the public policy of New York.

The "public policy inquiry rarely results in refusal to enforce a judgment unless it is inherently vicious, wicked or immoral, and shocking to the prevailing moral sense." Sung Hwan Co. v. Rite Aid Corp., 7 N.Y.3d 78, 82 (N.Y. 2006) (internal quotation marks omitted); see also Ackermann, 788 F.2d at 841 ("A judgment is unenforceable as against public policy to the extent that it is repugnant to fundamental notions of what is decent and just in the State where enforcement is sought. The standard is high, and infrequently met.") (internal quotation marks and citations omitted). Furthermore, "it is well established that mere divergence from American procedure does not render a foreign judgment unenforceable." Pariente v. Scott Meredith Literary Agency, Inc., 771 F. Supp. 609, 616 (S.D.N.Y. 1991). "Under New York law [,] . . . foreign decrees and proceedings will be given respect . . . even if the result under the foreign proceeding would be different than under American law." Id. (alterations in original; internal quotation marks omitted); see also Ackermann, 788 F.2d at 842 ("We are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home.") (quoting Loucks v. Std. Oil Co., 224 N.Y. 99, 111 (1918) (Cardozo, J.)).[3] Thus, "[o]nly in clear-cut cases

---

[3]For this reason, we reject the argument advanced by Viewfinder and amici that holding Viewfinder liable under French copyright laws would be repugnant to public policy because plaintiffs' dress designs are not copyrightable in the United States. While it is true that United States law does not extend copyright protection to dress designs, see Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d 996, 1002 (2d Cir. 1995) ("[C]lothes are not copyrightable."), Viewfinder presents no argument as to why this distinction would offend the public policy of New York. As the district court found in rejecting this argument below – which Viewfinder has not challenged on

ought [the public policy exception] to avail defendant." Ackermann, 788 F.2d at 841 (alteration in original; internal quotation marks omitted).

Laws that are antithetical to the First Amendment will create such a situation. Foreign judgments that impinge on First Amendment rights will be found to be "repugnant" to public policy. See, e.g., Bachchan v. India Abroad Publ'ns Inc., 585 N.Y.S.2d 661, 662 (N.Y. Sup. Ct. 1992) ("[I]f . . . the public policy to which the foreign judgment is repugnant is embodied in the First Amendment to the United States Constitution or the free speech guaranty of the Constitution of this State, the refusal to recognize the judgment should be, and it is deemed to be, 'constitutionally mandatory.'"); Yahoo!, Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme, 169 F. Supp. 2d 1181, 1189-90 (N.D. Cal. 2001) (holding unenforceable French judgment rendered under law prohibiting Nazi propaganda because such law would violate the First Amendment), rev'd on other grounds, 433 F.3d 1199 (9th Cir. 2006) (in banc). The district court in this case reached the conclusion that the French Judgments were unenforceable because they impinged on Viewfinder's First Amendment rights. In doing so, however, it appears not to have conducted the full analysis for us to affirm its decision.

The district court's decision appears to rest on the assumption that if Viewfinder is a news magazine reporting on a public event, then it has an absolute First Amendment defense to any attempt to sanction such conduct. The First Amendment does not provide such categorical protection. Intellectual property laws co-exist with the First Amendment in this country, and the

---

appeal – copyright laws are not "matters of strong moral principle" but rather represent "economic legislation based on policy decisions that assign rights based on assessments of what legal rules will produce the greatest economic good for society as a whole." Viewfinder, 406 F. Supp. 2d at 281.

9

fact that an entity is a news publication engaging in speech activity does not, standing alone, relieve such entities of their obligation to obey intellectual property laws. While an entity's status as a news publication may be highly probative on certain relevant inquiries, such as whether that entity has a fair use defense to copyright infringement, it does not render that entity immune from liability under intellectual property laws. In rejecting a First Amendment defense to a lawsuit by a confidential informant against a newspaper under a promissory estoppel theory, the Supreme Court stated:

> This case . . . is . . . controlled . . . by the . . . well-established line of decisions holding that generally applicable laws do not offend the First Amendment simply because their enforcement against the press has incidental effects on its ability to gather and report the news . . . . The press may not with impunity break and enter an office or dwelling to gather news. . . . The press, like others interested in publishing, may not publish copyrighted material without obeying the copyright laws. . . . It is, therefore, beyond dispute that [t]he publisher of a newspaper has no special immunity from the application of general laws. He has no special privilege to invade the rights and liberties of others. . . .
>
> . . . .
>
> . . . The dissenting opinions suggest that the press should not be subject to any law, including copyright law for example, which in any fashion or to any degree limits or restricts the press' right to report truthful information. The First Amendment does not grant the press such limitless protection.

Cohen v. Cowles Media Co., 501 U.S. 663, 669-671 (1991) (internal quotation marks and citations omitted; alteration in original); see also Harper & Row, Publishers, Inc. v. Nation Enters., 471 U.S. 539, 557 (1985) ("The fact that the words the author has chosen to clothe his narrative may of themselves be 'newsworthy' is not an independent justification for unauthorized copying of the author's expression prior to publication."); Zacchini v. Scripps-Howard Broad. Co., 433 U.S. 562, 574-75 (1977) ("Wherever the line in particular situations is to be drawn between media reports that are protected and those that are not, we are quite sure that the First

10

and Fourteenth Amendments do not immunize the media when they broadcast a performer's entire act without his consent. The Constitution no more prevents a State from requiring respondent to compensate petitioner for broadcasting his act on television than it would privilege respondent to film and broadcast a copyrighted dramatic work without liability to the copyright owner."); Int'l News Serv. v. Associated Press, 248 U.S. 215, 239-40 (1918) (Associated Press may be held liable under unfair competition laws for copying plaintiff's news articles published on bulletin boards and then selling them to competitors). Because the First Amendment does not provide news entities an exemption from compliance with intellectual property laws, the mere fact that Viewfinder may be characterized as a news magazine would not, standing alone, render the French Judgments repugnant to public policy.

Rather, because Section 5304(b) requires courts to examine the cause of action on which the foreign judgment was based, the district court should have analyzed whether the intellectual property regime upon which the French Judgments were based impinged on rights protected by the First Amendment. This is consistent with the two-step analysis courts apply in deciding whether foreign libel judgments are repugnant to public policy: (1) identifying the protections deemed constitutionally mandatory for the defamatory speech at issue, and (2) determining whether the foreign libel laws provide comparable protection. See, e.g., Bachchan, 585 N.Y.S.2d at 663-65; Abdullah v. Sheridan Square Press, Inc., No. 93 Civ. 2515, 1994 WL 419847, at *1 (S.D.N.Y. May 4, 1994). For instance, in Bachchan, the defamatory speech at issue related to a matter of public concern. Because the First Amendment requires a plaintiff to bear the burden of proving falsity when the speech involves matters of public concern, the New York court refused to enforce a British libel judgment because the British laws failed to provide this protection,

11

placing the burden of proof on the defendant to prove the truth. Bachchan, 585 N.Y.S.2d at 664. The same analysis is appropriate here. In deciding whether the French Judgments are repugnant to the public policy of New York, the district court should first determine the level of First Amendment protection required by New York public policy when a news entity engages in the unauthorized use of intellectual property at issue here. Then, it should determine whether the French intellectual property regime provides comparable protections.[4]

With regard to the protections provided by the First Amendment for the unauthorized use of copyrighted material, this court has held that absent extraordinary circumstances, "the fair use doctrine encompasses all claims of first amendment in the copyright field." Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd., 996 F.2d 1366, 1378 (2d Cir. 1993) (internal quotation marks omitted) (holding that book containing detailed synopses of episodes of television show "Twin Peaks" would, absent a fair use defense, infringe copyright on television show); see also, Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc., 166 F.3d 65, 74 (2d Cir. 1999) ("We have repeatedly rejected First Amendment challenges to injunctions from copyright infringement on the ground that First Amendment concerns are protected by and coextensive with the fair use doctrine."); Wainwright Sec., Inc. v. Wall St. Transcript Corp., 558 F.2d 91, 95 (2d Cir. 1977) ("Conflicts between interests protected by the first amendment and the copyright laws thus far have been resolved by application of the fair use doctrine."). Because the fair use doctrine balances the competing interests of the copyright laws and the First Amendment, some analysis of that doctrine is generally needed before a court can conclude that a foreign copyright judgment is

---

[4]We note that in some circumstances the repugnancy of the foreign judgment may be so patently obvious that a court need not engage in a detailed analysis of the foreign law at issue. This case, however, does not present such a scenario.

repugnant to public policy. Factors that must be considered in determining fair use are:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. As the Supreme Court has explained: "The task [of applying the fair use doctrine] is not to be simplified with bright-line rules, for the statute, like the doctrine it recognizes, calls for case-by-case analysis. . . . Nor may the four statutory factors be treated in isolation, one from another. All are to be explored, and the results weighed together, in light of the purposes of copyright." Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 577-578 (1994) (internal citations omitted).

In this case, the district court dispensed with the issue of fair use in a single sentence: "Similarly, even were plaintiffs' designs copyrightable, the copyright law similarly provides, as a matter of First Amendment necessity, a 'fair use' exception for the publication of newsworthy matters." Viewfinder, 406 F. Supp. 2d at 284. To the extent the district court believed that Viewfinder's use was necessarily fair use because it was publishing "newsworthy matters," this was erroneous. See, e.g., Harper & Row, 471 U.S. at 557 (finding that The Nation's use of verbatim quotes from upcoming Gerald Ford memoir regarding Watergate scandal was not fair use even though material related to matter of public importance); see also Roy Exp. Co. Establishment v. Columbia Broad. Sys., 672 F.2d 1095, 1099 (2d Cir. 1982) (rejecting argument from CBS that a "generalized First Amendment privilege" regarding "newsworthy events" precluded liability for copyright infringement); Iowa State Univ. Research Found., Inc. v. Am.

13

Broad. Cos., 621 F.2d 57, 61 (2d Cir. 1980) ("The fair use doctrine is not a license for corporate theft, empowering a court to ignore copyright whenever it determines the underlying work contains material of possible public importance."). Whether the material is newsworthy is but one factor in the fair use analysis.

While both parties urge this court to resolve the issue of fair use, the record before us is insufficient to determine fair use as a matter of law. See Harper & Row, 471 U.S. at 560 (noting that an appellate court need not remand "[w]here the district court has found facts sufficient to evaluate each of the statutory factors" for fair use). For instance, the record is unclear as to the percentage of plaintiffs' designs that were posted on firstView.com. While the French Judgments do provide some information as to the number of photographs posted by Viewfinder, that information is both incomplete and unclear because it does not indicate what proportion of plaintiffs' designs were revealed by these photographs.[5] Such factual findings are relevant in determining whether Viewfinder's use would constitute "fair use" under United States law. If the publication of photographs of copyrighted material in the same manner as Viewfinder has done in this case would not be fair use under United States law, then the French intellectual

_____

[5]On appeal, plaintiffs contend that the district court made a clearly erroneous factual finding that only a "few isolated photographs" were posted by Viewfinder. We do not read the district court's opinion to have made this finding. While it is true that the district court stated that "only isolated still photographs" were posted by Viewfinder, the district court made this reference when distinguishing the posting of photographs from the posting of a videotape of the entire fashion show. See Viewfinder, 406 F. Supp. 2d at 284 ("Defendant has published only isolated still photographs of the fashion show, not a videotape of the entire event . . . ."). There is no dispute that Viewfinder only posted photographs of the fashion show and did not post a videotape of the entire event. However, to the extent the district court's use of the word "isolated" was meant to imply that only a few photographs or only a few items of plaintiffs' collections were displayed on firstView.com, the record contains insufficient information to support such a finding.

14

property regime sanctioning the same conduct certainly would not be repugnant to public policy. Similarly, if the sole reason that Viewfinder's conduct would be permitted under United States copyright law is that plaintiffs' dress designs are not copyrightable in the United States, the French Judgment would not appear to be repugnant. However, without further development of the record, we cannot reach any conclusions as to whether Viewfinder's conduct would fall within the protection of the fair use doctrine.

The record is similarly unclear as to the manner of protection afforded plaintiffs' fashion shows by French law as well as the protections afforded to alleged infringers generally, and photographers specifically, under French law. The minutes of the French criminal judgment contained in the record[6] suggest that photographers may well enjoy some protection. These minutes indicate that the "Law covers a right to the benefit of the fashion designers that coexists with that of the photographers." Memorandum from Jean-Marc Fedida to Don Ashby, June 17, 2005, at 3 (emphasis added). Moreover, Article L 122-5(3) of the French Intellectual Property Code permits unauthorized use of copyrighted material in limited circumstances similar to uses deemed "fair use" under United States law. See Code de la propriete intellectuelle art. L 122-5(3) (Fr.), available at http://www.legifrance.gouv.fr.[7] Whether such protections are sufficiently

---

[6]Criminal proceedings were initiated in France against certain Viewfinder employees for the same conduct at issue in this case. In June 2005, the French criminal court found each of the defendants not guilty.

[7]We reject Viewfinder's contention that the French Judgments violate public policy because they failed to analyze any "fair use" defense. Even in the United States, fair use is an affirmative defense that a defendant bears the burden of proving. See Infinity Broad. Corp. v. Kirkwood, 150 F.3d 104, 107 (2d Cir. 1998) ("Since fair use is an affirmative defense to a claim of infringement, the burden of proof is on its proponent."). Viewfinder defaulted before the French court, and thus chose not to avail itself of the opportunity to present any affirmative defenses it may have under French law.

comparable to that required by the public policy of New York is a question best addressed in the first instance by the district court on a fully-developed record.

## CONCLUSION

For the foregoing reasons, we vacate the judgment of the district court and remand for further proceedings consistent with this opinion. Because we remand for a new analysis by the district court, we do not address the other grounds of alleged error raised by plaintiffs.